## STATE OF MARYLAND *vs.* STEVENSON ARCHER.

*State   Treasurer — Embezzlement — Construction   of   Penal statutes.*

Section 80 of Article 27 of the Code, provides that " Any person holding office in this State, whether elected or appointed by the Governor, by the corporate authorities of Baltimore, or by any other authority legally authorized to make such appointments, who shall fraudulently embezzle or appropriate to his own use money, funds, or evidences of debt, which he is by law bound to pay over, account for, or deliver to the treasurer of this State, or to any other person by law authorized to receive the same, shall be guilty of a misdemeanor, " &c.   The title of the original Act was " An Act to punish the fraudulent embezzlement or appropriation of money, funds, or evidences of debt by persons elected to any office, or holding office under the Governor of this State * * * or under any other authority legally authorized to appoint to said offices." HELD :

That under this section of the Code, the State treasurer could be indicted, and upon conviction punished for .fraudulently embezzling or appropriating to his own use the money or funds of the State.

Penal statutes are to be fairly and reasonably construed according to the legislative intent, and Courts will not, by a narrow and strained construction, exclude from their operation cases plainly within their scope and meaning.

APPEAL AS UPON WRIT OF ERROR, from the Criminal Court of Baltimore.

State *vs.* Archer.

The opinion of the Court, and the concurring opinion of Chief Judge ALVEY, furnish a full statement of the case.

The cause was argued before ALVEY, C. J., ROBINSON, IRVING, BRYAN, FOWLER, McSHERRY, and BRISCOE, J.

*Charles G. Kerr, State's Attorney for Baltimore City,* and *Wm. Pinkney Whyte, Attorney-General,* for the appellant.

Does section 80 of Article 27 apply to the treasurer of the State? What are the rules, by which the proper construction of statutes is made?

Penal laws should not be so strictly construed as to defeat the obvious purpose of the Legislature; and though they are not to be extended by construction *they should receive a rational interpretation.* *House vs. House,* 5 *H. & J.*, 125; *Keller vs. State,* 11 *Md.*, 536; *Ruth vs. State,* 20 *Md.*, 441; *State vs. Elborn,* 27 *Md.*, 483.

And Courts are bound to give effect to their plain and obvious meaning, *and not to narrow the construction.* *Germania vs. State,* 7 *Md.*, 1; *Parkinson vs. State,* 14 *Md.*, 195; *Wilson & Phillips vs. State, use of Davis,* 21 *Md.*, 2; *State vs. Leonard,* 6 *Coldwell,* (*Tenn.*,) 310.

Statutes are to be construed so as to meet the legislative intent. That intention may appear from the occasion and necessity of the law. *Cearfoss vs. State,* 42 *Md.*, 403; *United States vs. Lacher,* 134 *U. S.*, 624.

It is perfectly manifest, from the *title* of the original Act, (1854, ch. 196,) that it was intended to apply to *every public officer holding the funds, money or evidences of debt of the State.* Recent events have given rise to doubts as to the construction of the body of the Act, and we are at liberty to look at the title for aid in its true interpretation. It was conceded, in the argument for the defendant in error in the Court below, and will be doubtless admitted here, that if the words of the title had

been followed in the enacting clause, that the case of
the accused would be included within the terms of the
Act.    That both the title and the preamble of an Act
are to be resorted to in case of doubt as to the effect of a
statute and its true construction, has been decided by
this Court in a number of reported cases.    *Canal Com-
pany vs. Railroad Company,* 4 *Gill & J.,* 90; *Miller, May-
hew & Co. vs. Cumberland Cotton Factory,* 26 *Md.,* 492;
*Clark vs. Mayor and City Council of Baltimore,* 29 *Md.,*
285; *Myer vs. Car Company,* 102 *U. S.,* 11.

The Constitution of Maryland of 1851, which was in
force when the Act of 1854, ch. 196 was passed, con-
tained in the 17th section of Article 3, these words:
"Every law enacted by the Legislature shall embrace
but one subject, *and that shall be described in the title.*"
So that if there be doubts, a reference to the title is
eminently proper in the case.  And it seems to us, that a
reference to the language of the title puts the subject
beyond the pale of disputation.    These are the words:

"An Act to punish the fraudulent embezzlement or ap-
propriation of money, funds or evidences of debt by
*persons elected to any office,* or holding office under the
Governor of this State, or under the corporate authori-
ties of Baltimore, or under any other authority legally
authorized to appoint to said offices."

Is it possible to exclude the treasurer of this State
from the penalties of this Act, without interpolating
after the words, "persons elected to any office," this
language, "except the treasurer of the State?"  Is this
permissible in the construction of a penal statute ?  If
the body of the Act was *in totidem verbis* with the title,
could any sound argument be made, that the law did not
include the State treasurer ?

Taking, then, the title to aid the Court in finding the
legislative intent, does not common sense revolt at the
proposition, that a law whose subject must be described

State *vs.* Archer.

in the title to meet the constitutional requirement, and whose title so describes the object to be the punishment of persons, elected to *any office* of this State, who shall fraudulently embezzle or appropriate "money, funds or evidences of debt," really was never intended to reach that officer, who holds more public money than any other public officer in the State?

Now, the well known definition of embezzlement is the fraudulent appropriation of money, &c., belonging to another, but which came lawfully into the hands of the embezzler; so this Act was intended to apply to *every public officer,* who has in his hands public money or securities, which he has received on account of the authority, under which he is appointed.

But are we driven to the title to resolve the doubts suggested as arising from the language of the enacting clause?

1. *Any person, holding office in this State,* whether elected or appointed by the Governor, or by any other authority legally authorized to make such appointments. (*Here is a description of the person.*)

2. Who shall fraudulently embezzle or appropriate to his own use, *money, funds, or evidences of debt,* which he is bound by law to pay over, account for, or deliver to the treasurer of this State, or to any other person, by law authorized to receive the same. (*This is the offence.*)

3. Shall be guilty of a misdemeanor, and shall, upon conviction thereof, be sentenced to the penitentiary for not less than eighteen months, nor more than ten years. (*Here is the punishment.*)

Was not Stevenson Archer, on the 2nd of January, 1890, "a person holding office in this State," "elected" on joint ballot by the two Houses of the Legislature? Is not this a *concessum*? Did he not fraudulently embezzle, or misappropriate to his own use, money or evidences of debt belonging to the State? The fact is

admitted by the demurrer; yet we are told that this language does not apply to him, but only to *all other* officers having financial relations with the State.    How can this be ?    Is there " any person holding office in this State," *except the treasurer*, having in his possession "*funds or evidences of debt*" *belonging to the State*, which he is bound by law to account for or deliver to the treasurer of the State?    Is not this very language descriptive of the treasurer, and of him alone?    Clerks, registers, tax collectors and the like, hold the "*money*," of the State; but where is the "officer," save and except the treasurer, who holds "its evidences of debt," for which he is "accountable" to his successor in office, the only officer recognized under the Constitution as the hand of the State to receive its " bonds and evidences of debt," and the constituted custodian, under the law, of the bonds and certificates belonging to the State's Sinking Funds.

If this language does not refer to the treasurer, to whom does it refer?

But it was contended below that because the kind of "evidences of debt " are described as those "which he (the person holding office) is bound by law to pay over, account for, and deliver to the treasurer of the State," and that while holding office as treasurer the then incumbent was not bound to pay over and deliver them to himself as treasurer; therefore the law does not reach the accused "for he couldn't embezzle from himself."    This argument, which was acquiesced in by the Court below seems to us absolutely unsound.

To give the Act such a construction needs again the process of interpolation, for it is necessary to insert the words *eo instanti* between " by law " and " to pay over, &c."    So that the clause would read, "evidences of debt," which he is bound by law, *eo instanti*, to pay over, &c.: but the Act will bear no such construction.

The accounting or delivery to the treasurer is not limited to a time before the act of embezzlement took place. It was not an obligation to be performed *in the present*, but was an accounting or delivery *in futuro*, whenever by law the time arrived that the "person holding office" is to deliver the "evidences of debt" to the person entitled to receive them; as in case of this officer, whose term of office has expired, and whose successor has qualified; and the outgoing official is bound to deliver these evidences of debt to his successor, the then treasurer. The language used is descriptive of the trust. It refers to valuable effects lawfully in the hands of the embezzler, but impressed with the trust that, belonging to the State, he is to deliver them to the person legally authorized to receive them, to wit, his successor as treasurer, and at the time when his term of office has expired, and by law he is bound to give account of his stewardship.

The indictment charges that he was bound by law to deliver these "evidences of debt" of the State to his "successor in office," and this obligation is admitted by the demurrer; if, therefore, he has failed or refused to hand them over to his "successor in office," that act, unexplained, is conclusive evidence of the crime of embezzlement. Upon a statute similar in substance, this has been distinctly held to be good law. *State vs. Leonard*, 6 *Coldwell*, 309; *State vs. Cameron*, 3 *Heiskell*, 85. See the case of *The People vs. McKinney*, 10 *Mich.*, 81.

*Edgar H. Gans*, and *Bernard Carter*, for the appellee.

The question being one of statutory construction, it will be necessary first to state the rules by which the Court should be governed in ascertaining the meaning of the Legislature.

RULE 1. When a penal statute is ambiguous, every reasonable doubt in its construction must be solved in

favor of the traverser. *Bishop on Stat. Crimes, secs.* 194, 218; *Schooner Enterprise,* 1 *Paine,* 33–4; *Kent vs. State,* 8 *Blackford,* 163; *People vs. Howell,* 4 *Johns.,* 301; *United States vs. Wigglesworth,* 2 *Story Rep.,* 374.

RULE 2. The Court has no power to correct a mistake or supply an omission, or put words into a statute in order to carry out the Court's idea of policy or morals. *Maxwell, et al., Assessors vs. State, ex rel. Baldwin,* 40 *Md.,* 294; *Hawbecker, et al. vs. Hawbecker, et al.,* 43 *Md.,* 519, 522; *State, &c. vs. Kirkley, et al.,* 29 *Md.,* 103; *Alexander vs. Worthington, et al.,* 5 *Md.,* 485; *Collins vs. Carman's Ex'r,* 5 *Md.,* 529, 530; *Young vs. Mackall,* 3 *Md. Ch. Dec.,* 406; *Smith vs. State,* 66 *Md.,* 217.

RULE 3. No statutory offences by construction. *Cearfoss vs. State,* 42 *Md.,* 407.

From these rules of statutory construction, and from the principles enunciated in the authorities referred to, it is evident that this Court has nothing to do with the policy of allowing large offenders to escape when small ones are punished, nor with the question as to what the Legislature should have done when they were making this law. Nor should this Court interpolate words into this statute for the purpose of having their ideas of justice carried out. Their only duty is to expound *the law as they find it.* The responsibility of any *casus omissus* or intentional exception of any person from the operation of the statute, rests with the Legislature. The simple question is, what has the Legislature said?

For the purpose of obtaining a clearer view of the statute, we shall eliminate all those parts of it which have nothing to do with this discussion, thus: The method of appointment, the character of the funds, *i. e.,* whether money, funds or evidences of debt, and the punishment, have nothing to do with the question before the Court. Nor has the phrase, "or to any other person

by law authorized to receive the same," anything to do with this case; for it is evident that there is no person to whom the State treasurer is bound to pay over the State funds whilst he is State treasurer; and after his removal from office, he is bound by law to pay to no person but the State treasurer, his successor in office. This is the theory of the indictment; for it alleges in all the counts —"which he, the said Stevenson Archer, was bound to account for and deliver to Edwin H. Brown, treasurer of the State, to wit: The State of Maryland, duly appointed and qualified, his successor in office." There is therefore no other person except the treasurer to whom the appellee, by any possible construction, could be obliged to account.

The statute, with all the immaterial words eliminated, reads as follows :

Any person holding office in this State * * who shall fraudulently embezzle * * funds * * which he is by law bound to pay over, account for or deliver to the treasurer of this State * * shall be guilty, &c.

By the obvious and natural construction of this language the State treasurer is not embraced by its provisions.

1. The offence is to be committed by a *person holding office*; but it does not embrace all office holders. It expressly includes only those office holders who are obliged to pay over to the treasurer. Now the treasurer cannot be said to be obliged to pay over to himself; therefore he is not included by the terms of the statute.

2. The statute divides office holders into two classes: 1st. Those who are obliged to pay over, and 2nd. Those whose duty it is to receive. The offence can be committed only by those obliged to pay over. The treasurer is not one of those, for he is mentioned in the statute merely for the purpose of defining those who may embezzle. He cannot pay over to any one. The attempt to do so would be a violation of the duties of his office.

3. It is impossible to conceive that the Legislature intended to include the treasurer within the terms of this law.    He is the most important financial officer of the government.  To him are entrusted larger sums of money than to any other officer.    If the Legislature had intended to include him within the terms of this penal law, would they not have done so, by plain and unambiguous words?  Why is the expression—"who are bound to pay over to the treasurer" placed in the law?    What meaning has it?    Does it not evidently mean that a certain class of officers only are amenable to the punishment prescribed?    And is not the treasurer mentioned in the law not as one of that class, but as being the person to whom that class must account?    If the intention had been to include the treasurer, he would have been mentioned in express terms; or general language would have been used about which there would have been no ambiguity.    For example, if the law had read, "any public officer who shall embezzle any public funds intrusted to his charge, or of which he comes into possession by virtue of his office, shall be guilty, &c.," there would be no doubt of the liability of the State treasurer.

4. This view is strengthened by an examination of the title of the law.    The title reads: "An Act to punish the fraudulent embezzlement or appropriation of money, funds or evidences of debt by persons elected to any office, or holding office under the Governor of this State, or under the corporate authorities of Baltimore, or under any other authority legally authorized to appoint to said office."  Act 1854, ch. 196.

If the law had been drawn in accordance with the tenor of this title, the treasurer would have heen included within its provisions.    Yet with the attention of the Legislature specifically drawn to the treasurer, they depart from the title of the law and exclude the treasurer by making the law applicable only to those who are

bound to pay over to him. The law is well settled, that if there is any conflict between the enacting clause of a law and the title, the enacting clause is to prevail. The title may contract, but never expand the meaning of the enacting clause. *Lucas vs. McBlair*, 12 *G. & J.*, 17–18 ; *Hays vs. Richardson*, 1 *G. & J.*, 380; *Canal Company vs. Railroad Company*, 4 *G. & J.*, 91; *Davidson vs. Clayland*, 1 *H. & J.*, 546; *Kent vs. Somervell*, 7 *G. & J.*, 274.

5. It is suggested that the obligation of the traverser to pay over to his successor gratifies the terms of the law. This construction is manifestly erroneous, for the obligation to pay over is an obligation which must exist as *one of the duties of the office.* The statute is directed against persons holding office, and not against private persons. The obligation of the traverser to pay to his successor could not possibly arise until he had ceased to be a person holding office. This will more clearly appear by the following analysis of the statute: An analysis of the provisions of this statute makes it evident that the State treasurer was not intended to be included by its terms.

Every crime is made up of certain elements which must co-exist, or the crime cannot be said to have been committed. Take the crimes of larceny and burglary as illustrations. In larceny there are four elements : 1. The taking and carrying away. 2. By trespass. 3. Of the personal goods of another. 4. With intent to deprive the owner permanently of his property therein.

The crime of larceny cannot be committed with any one of these elements lacking.

So as to burglary, which consists in: 1. A breaking and entering. 2. In the night time. 3. Into the dwelling house of another. 4. With intent to commit felony therein.

These illustrations show that when a crime is analyzed, it is composed of certain elements, all of which

must co-exist, or the crime is not committed. In the rough analysis of this statutory crime heretofore made, the appellee has attached the obligation to pay over, to the person, and not to the funds, and this is made the subject of special assignment of error.

The appellee thinks it makes no difference whether the obligation to pay is attached to the person, or impressed on the funds; and, in order to make this clear, will, in the following analysis, treat it as impressed on the fund. Analyzing the statute in this way, the statutory crime created by section 80 of Article 27 of the Code is composed of three elements: 1st. Any person holding office. 2nd. Who shall fraudulently embezzle. 3rd. Funds which he is obliged by law to pay over, account for or deliver to the treasurer of the State.

As we have seen, the crime cannot be committed unless these elements concur or co-exist. Two of these elements will not make the crime. Now, it is evident that these three elements, which constitute the crime, cannot co-exist in the case of the State treasurer. The crime must have some *punctum temporis*. If the crime is said to have been committed before the appellee was dismissed from office, then the third element of the crime is wanting, to wit: there were no funds which he was obliged to pay over, account for or deliver to the treasurer of the State, he being then the treasurer himself. If the crime is said to have been committed after he was discharged from office, then the first element of the crime is lacking, to wit: he was not then a person holding office. It is evident, therefore, that no *punctum temporis* can be suggested at which the State treasurer, or one who has been State treasurer, can be brought within the analytic definition of this statutory crime. The State has exposed this difficulty in the very frame work of the indictment, which contains a legal contradiction; nor can any indictment be framed which will

State *vs.* Archer.

not contain the same contradiction. The indictment charges that on January 2, 1890, Stevenson Archer *was holding the office of treasurer* of the State, and that he then and there fraudulently embezzled funds which he was bound to account for and deliver to Edwin H. Brown, *treasurer of the State,* his successor in office. Now, on January 2, 1890, Edwin H. Brown was not treasurer of the State, but a private citizen, and at that time Stevenson Archer was not bound to pay him anything. Mr. Archer was arrested on April 10, 1890, and was not removed from office until April 15th, 1890. If the crime had been alleged, instead of on January 2, 1890, at any date anterior to April 15th, 1890, the same contradiction would exist, for in the nature of things, two persons cannot hold the same office at the same time, nor can a person have a successor in office until after he has ceased to occupy that office himself. See *The State vs. Hebel,* 72 *Indiana,* 364. If the State places the crime after April 15th, 1890, then it cannot allege, as is necessary, that at that time Stevenson Archer was holding office.

The fundamental and inherent fallacy of the State's case is shown by the fact that it cannot draw an indictment which is not self-contradictory. This contradiction may be taken advantage of by demurrer. *U. S. vs. Smith,* 8 *Sup. Ct. Rep.,* 595.

The cases cited by the Attorney-General to show that the refusal or failure to pay over by a retiring officer to his successor in office, is part of the crime of embezzlement, do not so decide; and even if they did, they were decided upon statutes which materially differ in their terms from the statute under consideration. For example, the case of *State vs. Leonard,* 6 *Coldwell,* 309, merely affirms the doctrine of the common law as stated in *Stephen's Digest of Criminal Law,* 248, that failure to pay over to a successor in office is *evidence* of an an-

tecedent embezzlement. The distinction between the failure to pay over to a successor in office, being *evidence* of an antecedent crime, and *not a part of the crime itself*, is fully shown in *State vs. Munch,* 22 *Minn.,* 67; *The People vs. McKinney,* 10 *Mich.*; 80.

There is no case deciding that failure to pay over to a successor is any part of the crime of official embezzlement. On the contrary, whenever it is desired to punish for such a failure, it is made a crime by a separate and distinct statute. *State vs. Ring,* 29 *Minn.,* 78; *State vs. Munch,* 22 *Minn.,* 67; *State of Arkansas vs. Hunnicut,* 34 *Ark.,* 562; *Hollingsworth vs. State,* 111 *Ind.,* 294; *State vs. Leonard,* 6 *Coldwell,* 309; *The People vs. McKinney,* 10 *Mich.,* 80; *Howell's Annotated Statutes, sections* 9149, 9150.

ROBINSON, J., delivered the opinion of the Court.

The defendant in error was indicted under section 80 of Article 27 of the Code, which provides that " Any person holding office in this State, whether elected, or appointed by the Governor, by the corporate authorities of Baltimore, or by any other authority legally authorized to make such appointments, who shall fraudulently embezzle or appropriate to his own use money, funds or evidences of debt, which he is by law bound to pay over, account for or deliver to the treasurer of this State, or to any other person by law authorized to receive the same, shall be guilty of a misdemeanor," &c.

The indictment charges that the " defendant in error," being the duly elected and qualified treasurer of the State, fraudulently embezzled and appropriated to his own use money and evidences of debt belonging to the State, and which he was bound to account for and deliver to Edwin H. Brown, his successor in office. The sole question is whether the offence thus charged comes within the provisions of the Code, or, in other words,

State *vs.* Archer.

whether the Code provides for the punishment of the
State treasurer who embezzles the State funds.

The question is a narrow one, and turns entirely upon
the construction of the statute. A good deal was said
about the general rules by which Courts are governed in
the construction of statutes; but these are too well set-
tled to admit of much discussion. All agree that the
intention of the Legislature must govern in the construc-
tion of all statutes. This rule lies at the bottom of all
statutory construction. The law, it is true, in its ten-
derness for life and liberty, requires that penal statutes
shall be strictly construed; by which is meant that
Courts will not extend the punishment to cases not
plainly within the language used. At the same time,
such statutes are to be fairly and reasonably construed,
and Courts will not, by a narrow and strained construc-
tion, exclude from their operation cases plainly within
their scope and meaning. As stated by *Sedgwick on
Statutory Law, p.* 287, and quoted with approval by
BRAMWELL, B., in *Foley vs. Fletcher,* 28 *L. J. Exch.,*
100: " The more correct version of the doctrine appears
to be that statutes of this class are to be fairly con-
strued and faithfully applied according to the intent of
the Legislature, without unwarrantable severity on the
one hand or equally unjustifiable lenity on the other; in
cases of doubt the Courts inclining to mercy." After
all, then, it is *the legislative intent* that must govern in
the construction of penal as in all other statutes.
*Lyon's Case, Bell's Crown Cases,* 45; *Nicholson vs. Fields,*
31 *L. J. Exch.,* 233; *The Gauntlet L. R.,* 4 *Privy Council
Appeals,* 191; *United States vs. Lacher,* 134 *U. S.,* 624.

This intention is to be ascertained, primarily, of course,
from the language of the statute itself, and, if the lan-
guage used is plain and unambiguous, the Legislature
must be understood as meaning what they have expressly
declared. Now, what is the language of the statute

under  consideration?    " Any  person  holding  office  in
this State    *    *    *    who shall fraudulently embezzle or
appropriate  to his· own  use,  money,  funds,  or  evidences
of  debt,  which  he.is  by  law  bound  to  pay  over,  account
for,  or  deliver  to  the  treasurer  of  the  State," etc.    Pro-
vision  is  thus  made  for  the  punishment  of ,all  officers
who  shall  embezzle funds  of  the  State, which  they  are
bound  to  pay  over  or  deliver  to the  treasurer,  but  this,
it is argued,  does  not  include  the  *treasurer* because  he
cannot  be said  to be bound  to pay  over  or  deliver such
funds  to  himself.    If  the  statute  stopped  here,  there
might  be some ground for this contention.    But  it does
not  stop  here,  having  made provision for  the punishment
of  such  officers,  that  is  to  say,  officers whose  duty  it  is
to  pay  over  and  account for  to  the  treasurer;  it further
provides  for  the  punishment  of  all  officers  who  shall
embezzle  money,  funds,  or  evidences  of  debt  belonging
to  the  State,  which  they  are  bound  to  pay  over,  account
for  or  deliver  *"to  any  other  person  by  law  authorized  to
receive  the  same."*    Such  is the  plain  and  unambiguous
language  of  the  latter part  of  the  enacting  clause,  and
it  would  be  difficult  to  employ  language  broader  and
more  comprehensive.    Thus  the  body  of  the  Act  not
only  provides for  the  punishment  of  such  officers  who
shall  embezzle  State  funds  which  they  are  bound  to  pay
or  deliver  to  the  treasurer,  but  also  for  the  punishment
of  all  officers  who  shall  embezzle  money  or  funds of  the
State  which  they  are  bound  to  pay  or  deliver  to any person
lawfully  authorized  to  receive  the  same.    So  the  ques-
tion  comes  to  this:  Did  the  defendant  in  error,  embezzle
or  appropriate  to his own  use,  moneys,  funds,  or  evidences
of  debt  belonging  to  the  State,  which  he  was  bound  to
pay  or  deliver  "to  any  person  by  law  authorized  to  re-
ceive  the  same?"    If  he  did,  then  the  offence  charged
in  the  indictment  is  one  within  the  very  letter  of  the
statute.    The  embezzlement  being  admitted  by  the

demurrer, the only question is whether the funds embezzled were funds which he was bound to pay over, account for, or deliver to any person lawfully authorized to receive the same. And as to this there cannot be, it seems any question. He is the most important financial officer of the State. The entire revenue of the State, amounting to millions of dollars, is paid to him, and by him to be disbursed in the mode and manner provided by law. Besides this, the Sinking Fund, the productive and unproductive assets, are entrusted to his care and custody, and the surplus revenue remaining in the treasury, he is directed to invest from time to time, in State or other securities, all of which are committed to his keeping. These funds belong to the State, and are held by him as treasurer, and when he ceases to be treasurer, whether by removal or otherwise, he is bound to pay over, account for, and deliver such funds to his successor in office, who is the person lawfully authorized to receive the same. Upon his failure to do so, his official bond would be liable in a civil action, and for the embezzlement of such funds by him while in office, the defendant in error would be criminally responsible. Now, against this plain and obvious construction of the statute, what is the contention on the other side? There must be, it was argued, a point of time when the crime was committed, and it could not be said to have been committed before the defendant was dismissed from office, because there were no funds which he was obliged to pay over or deliver to the treasurer of the State, he being the treasurer himself. Nor could the crime be said to have been committed after he was discharged from office, because he was not then a person holding office. So according to this contention, there was no point of time when the defendant could have committed the crime. The bare statement of such an argument is an answer to the argument itself. There must

have been, it is true, a point of time when the crime
was committed, and *that point of time, was when the
defendant embezzled the funds of the State in his possession,*
as its treasurer, and which he was bound to pay over,
account for or deliver *to any person lawfully authorized* to
receive the same. He was bound, as we have said, to
pay over, or deliver such funds to his successor in office,
and the crime was complete when he embezzled or appro-
priated the same to his own use. The crime being com-
plete, his subsequent removal in no manner affected his
criminal responsibility. He is indicted as Stevenson
Archer, and as such he is answerable for a crime com-
mitted by him while holding the office of treasurer.

And, although his *official character* is gone, his *personal
responsibility* for the crime thus committed remains. So
looking to the face of the statute itself and construing
the language used in its natural, ordinary, and common
sense meaning, we all agree that the offence charged in
the indictment is one strictly within the terms of the
statute.

But, if there could be any question as to the construc-
tion of the words of the statute, the Title to the statute
shows beyond doubt that the Legislature meant to pro-
vide for the punishment of every officer who shall em-
bezzle or appropriate to his own use money or funds
belonging to the State. Section 80 of Article 27 of the
Code is a codification of the Act of 1854, chapter 196,
and the title to the Act reads as follows: "An Act to
punish the fraudulent embezzlement or appropriation of
money, funds or evidences of debt by persons elected to
any office, or holding office under the Governor of this
State, or under the corporate authorities of Baltimore,
or under any other authorities legally authorized to ap-
point to said offices."

This language the counsel for the defendant in error
admit is broad enough to include the treasurer of the

State *vs.* Archer.

State; and, although the title will not be permitted to control the express language of the Act, yet, if the language is somewhat obscure or doubtful, it may be considered to aid in the interpretation of the Act, and thereby give to the enacting clause a meaning consistent, rather than at variance, with the clear title of the Act. *Canal Company vs. Railroad Company*, 4 *G. & J.*, 90; *Clark vs. Mayor and City Council of Baltimore*, 29 *Md.*, 285; *Shaw vs. Ruddin*, 9 *Ir. Com. L. Rep.*, 214; *Brett vs. Brett*, 3 *Addams' Eccl. Rep.*, 211; *Hardcastle's Statutory Law*, 94; *Myer vs. Car Company*, 102 *U. S.*, 1.

So, if there be any doubt as to the precise meaning of the language used in the body of the Act now before us, which we by no means concede, yet, when construed in connection with its title, we are forced to the conclusion that the Legislature meant to provide for the punishment of every officer who shall embezzle funds belonging to the State, and which he was bound to pay over, account for or deliver to any person lawfully authorized to receive the same.  Any other construction would, it seems to us, do violence not only to the plain and unambiguous language of the statute itself, but would in a measure defeat the wise and salutary purposes for which it was passed.

The object of the statute was to protect the State against loss from embezzlement of the State funds by State officers, and it would be strange, indeed, that the Legislature should provide for the punishment of all officers except the treasurer, who is the most important financial officer of the State, and by the official misconduct of whom the State might suffer the greater loss and injury.  To such a strained and narrow construction as this we cannot agree.

> *Judgment reversed, and*
> *cause remanded.*

(Decided 1st July, 1890.)

Chief Judge ALVEY delivered the following concurring opinion, in which Judge IRVING united:

This case is brought into this Court by the State, on petition and assignment of errors, from the Criminal Court of Baltimore. The indictment consists of four counts, all framed under section 80 of Article 27 of the Code. The first count charges that the accused, being the treasurer of the State, and as such having in his possession and custody certain bonds for the payment of money, the property of the State of Maryland, *unlawfully and fraudulently did embezzle the same;* and which bonds the accused was bound to account for and deliver to Edwin H. Brown, duly appointed and qualified, treasurer of the State, his successor in office.

The second count is like the first, except that it charges that the accused, being the treasurer of the State, and as such having in his possession certain bonds described, the property of the State, *did unlawfully and fraudulently appropriate the same to his own use;* and which said bonds the accused was bound to account for and deliver to Edwin H. Brown, the treasurer of the State, duly appointed and qualified, his successor in office.

The third count charges that the accused, being the treasurer of the State, was, as such treasurer, in possession of a large sum of money, the property of the State, and being so in possession of such sum of money, he *unlawfully and fraudulently did embezzle the same;* and which sum of money he was bound to pay over, account for and deliver to Edwin H. Brown, the treasurer of the State, duly appointed and qualified, his successor in office. And the fourth count is the same as the third, with the difference that it charges that the accused *unlawfully and fraudulently did appropriate to his own use* the sum of money mentioned in the third count.

State *vs.* Archer.

,The accused demurred to each count of the indictment, and the demurrer was sustained and the indictment quashed.

By the assignment of errors it appears that the Court below held that section 80 of Article 27 of the Code, does not apply to or embrace the treasurer of the State, as one of the officers contemplated by that section; that the treasurer being the officer to whom the accounting is to be made, he is not one of the officers made liable to prosecution for fraudulently embezzling or appropriating to his own use the money or funds of the State. That no officer is liable to prosecution for embezzlement under the statute, unless *at the time* of such embezzlement or appropriation of the money or funds to his own use, he was bound to pay over, account for, or deliver them to the treasurer; and that as the treasurer was not bound to account for, pay over, or deliver such money and funds until he had ceased to be treasurer, and then to his successor in his office, the conclusion is deduced that the provision of the statute has no application to the treasurer of the State, for any embezzlements that he may have committed while in office. Or, as contended by the counsel for the accused, the offence can only be committed by a *person holding office;* but the statute does not embrace all office holders. That it expressly *includes only* those office holders who are obliged to pay over to the treasurer; and as the treasurer cannot be said to be obliged to pay over to himself, therefore he is not included by the terms of the statute.

If this be the true construction of the statute it certainly shows our law to be lamentably defective in a particular most important to the protection of the people of the State. That *all* persons holding office in this State should be liable to prosecution for the embezzlement of public funds, save and except the one officer whose special duty it is to keep safely and render a

faithful account of all the money and funds of the State that may have come into his hands or custody, is a state of things that no one could have supposed to exist. It is certainly not fair to the Legislature of the State to suppose that it could have intended such a state of the law to exist, when we see how comprehensive are the provisions of the statutes to secure a faithful accountability from all persons collecting and holding the public funds. But does this extraordinary exemption claimed for the treasurer result from a fair and reasonable construction of the statute? I think not.

The section of the Code, under which the accused has been indicted, employs these brief but comprehensive terms: "*Any* person holding office in this State, whether elected, or appointed by the Governor, by the corporate authorities of Baltimore, or by any other authority legally authorised to make such appointments, who shall fraudulently embezzle or appropriate to his own use money, funds or evidences of debt, *which he is by law bound to pay over, account for, or deliver to the treasurer of this State,* or to any other person by law authorized to receive the same, shall be guilty of a misdemeanor, and shall, upon conviction thereof, be sentenced," &c.

Words more comprehensive than these could hardly be used to embrace every officer in the State accountable for public money or funds in his possession or control. There can be no question, of course, of the fact that the accused was an officer in the State, duly elected by competent authority, and that it was by virtue of his office that he became possessed of the money and bonds of the State, charged to have been fraudulently embezzled and appropriated by him. It is true, while he remained in office he was the financial agent and representative of the State to whom all other officers holding the State's funds were bound to account; but it does not follow that he was not also bound to account. While he remained in

office, and was in the exercise of its functions, the form of accounting with himself was not observed; but from the moment he ceased to be the incumbent of the office, and there was a successor appointed and qualified, he was bound to account for and pay over all the money and funds that had come to his possession belonging to the State that had not been lawfully disbursed by him. This is the clear import of those provisions of the Constitution and laws of the State, prescribing his powers and duties, as it is of the oath of his office, and the bond given for the faithful discharge of those duties; and his duties of office have not been performed until he has fully accounted with and paid over to his successor all the money and funds for which he is bound to account. The words of the statute relied on as showing that the treasurer was not intended to be embraced, viz., "which he is by law bound to pay over, account for, or deliver to the treasurer of the State," do not show any such legislative intention. They do not show that the treasurer was intended to be excluded from the operation of the statute, but are only descriptive of the liability to account; and certainly the treasurer is bound to account to his successor. And therefore, if during the period of his incumbency of office, *and thereafter,* until he has fully discharged the duties of the office, by accounting for and paying over the funds belonging to the State, he fraudulently embezzles or appropriates them to his own use, he is clearly within the terms and purview of the statute, and liable to indictment for such embezzlement and fraudulent appropriation. For though it be true that he does not account to himself while holding the office, yet, after his successor is appointed, he continues to hold an official relation to the department until he has fully discharged all the duties assumed by him, by fully accounting for and paying over the funds of the State to his successor; and until this be done he is an officer

within the meaning and sense of the statute.   He holds the money and funds of the State, not as his own, but in an official capacity of agent or trustee of the State, and as such he is liable for his frauds and embezzlements.

I concur with the rest of the Court, in the conclusion reached by them, and am decidedly of opinion that the judgment sustaining the demurrer and quashing the indictment must be reversed.

(Filed 3rd July, 1890.)