## FORD *v.* STATE

[No. 137, September Term, 1964.]

*Decided January 6, 1965.*

The cause was argued before HAMMOND, HORNEY, MAR-BURY, SYBERT and OPPENHEIMER, JJ.

*Robert V. Lazzaro* for appellant.

*Mathias J. DeVito, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, William J. O'Donnell* and *Julius A. Romano, State's Attorney* and *Assistant State's Attorney,* respectively, *for Baltimore City* on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

The appellant Ford is a young man who was serving a six months' sentence at Hagerstown for operating a motor vehicle without a license when he was indicted for burglary and larceny

of an automobile. He was brought into the Criminal Court of Baltimore to stand trial by a "correctional officer" of the Maryland Correctional Institution. His handcuffs were removed and he asked and was granted permission to get a drink of water. He broke away from his guard and ran out of the courtroom, but was recaptured on the street almost immediately and returned for trial on the pending indictments. He was subsequently indicted for and convicted of escape.[1]

Judge Harlan imposed a two-year sentence for the escape, to begin at the expiration of the sentences he had imposed for burglary and larceny. Ford, evidently irked because the prison authorities had punished him by solitary confinement for a number of days before the trial (his gripe is that since he was not physically within the confines of the prison at the time of his escape he was not guilty of a breach of prison·rules or discipline which would justify punishing him administratively at the prison), contends that the two-year sentence amounted to double jeopardy and was invalid.[2]

The reasons the appellant has used to convince himself he should not have been punished by the prison authorities and again by the court are understandable but not legally sound. In *Best v. Warden*, 235 Md. 633, the prisoner who had been taken from the penal institution to the University Hospital for medical treatment walked off after his guard went to telephone for transportation back to the penitentiary. In challenging his conviction for escape on post conviction, the prisoner argued he did not commit the crime of escape as defined in Code (1957),

---

1. Ford explained that his reason and purpose for escaping were to marry his girl who was pregnant with his child and who he had learned just before being brought into the courtroom could not get Welfare Department payments because she was not married. There is a hint, and perhaps a hope, of a happy ending to the story in the remarks of Judge Harlan to the appellant, after saying that he would be lenient in sentencing: "I understand your girl is going to wait for you. I suggest that you do everything possible to behave yourself and perhaps you can get out and straighten yourself out."

2. It may be inferred that Judge Harlan, in deciding the length of the sentence for escape, took into account the fact of the administrative punishment.

Art. 27, Sec. 139, "since he was left unguarded and the hospital was not a place of confinement," and that since he had received institutional punishment for his escape his subsequent conviction and the sentence therefor constituted double jeopardy. Both contentions were rejected by this Court. We said (pp. 634-635):

> "The argument that the applicant did not commit the crime of escape since he was left unguarded and the hospital was not a 'place of confinement', is answered in *Johnson v. Warden,* 196 Md. 672, 75 A. 2d 843 (1950). There this Court held that a prisoner was legally confined in the State Reformatory within the meaning of what is now Art. 27, sec. 139, even though he was allowed to work outside, unguarded, on a private farm, and that, when he escaped from the farm, he was subject to punishment for escape from the Reformatory. The same reasoning applies in the instant case, and thus the applicant was properly convicted of escape under Art. 27, sec. 139. Cf. *Taylor v. State,* 229 Md. 128, 182 A. 2d 52 (1962). The claim that the guard had abandoned 'jurisdiction' or custody (even if it were assumed that he could lawfully do so), is negated by the fact that the only reason the applicant was left alone was to permit the guard to arrange for transportation back to the penitentiary.
>
> "In regard to the second contention, institutional punishment was not the equivalent of a trial and the applicant was not put in jeopardy thereby."

The rule against double jeopardy in Maryland is not established by the Constitution of the State but derives from the common law. The rule may be amended by the Legislature and a statute which is inconsistent with its common law scope and effect will prevail. *Wampler v. Warden,* 231 Md. 639, 645; *Ruckle v. State,* 230 Md. 580, 583; *Moquin v. State,* 216 Md. 524; *Eggleston v. State,* 209 Md. 504; *Johnson v. State,* 191 Md. 447; *Robb v. State,* 190 Md. 641. Sec. 692 of Art. 27 of the Code (1964 Supp.) provides for the character and administration of intra-mural punishments "for violation of discipline

in the institutions" of the Department of Correction, and Sec. 139 of Art. 27 of the Code (1964 Supp.) makes an escape from a place of confinement by the State a crime, and authorizes, upon conviction, the imposition of a prison sentence up to ten years in most cases and up to three years in others.

The two statutes can stand together and both, therefore, may be effectively utilized to punish the same escape, without double jeopardy coming into play.

In addition, it has consistently been held that double jeopardy attaches only when the first punishment is in a court of law empowered to impose punishment, *Moquin v. State, supra,* and the solitary confinement of Ford by the prison authorities was not in this category. The state and federal courts which have considered the question in cases where the facts were analogous to those here under review have held that administrative punishment for breach of prison discipline does not cause a fine, imprisonment or other punishment meted out by a court after trial for crime of escape to amount to double jeopardy.[3]

The appellant concedes the proposition just discussed but argues that the cases cited in the footnote which support it deal with escapes from within the confines of the prison walls. As we have seen, Maryland draws no distinction between an escape from within the prison walls and one effected when the prisoner, while still in legal custody, was physically outside the prison area.

*Judgment affirmed.*

---

3. State v. Gonyer (N. H.), 162 A. 2d 172 (1960); People v. Elliott (Calif. D. C. of App.), 34 Cal. Rptr. 560 (1963); State v. Williams (Wash.), 356 P. 2d 99 (1960); State v. Gore (Tenn.), 175 S. W. 2d 317 (1943); State v. Cahill (Iowa), 194 N. W. 191 (1923); People v. Huntley (Mich.), 71 N. W. 178 (1897). The federal cases decided on the Fifth Amendment are in accord: Patterson v. United States, 183 F. 2d 327, 328 (4th Cir., 1950), cert. den. 340 U. S. 893 (1950); Mullican v. United States, 252 F. 2d 398, 400 (5th Cir., 1958).