DAN M. LEE, Presiding Justice,
for the Court:
On October 31, 1983, appellant received two (2) five (5) year sentences in the Mississippi Department of Corrections for the crime of uttering a forgery pursuant to a conviction in the County Court of Desoto county. On September 12, 1985, appellant was paroled from the Mississippi State Penitentiary. Then, on April 17, 1986, he violated his probation resulting in a warrant being issued by the Mississippi Corrections Department for his arrest.
An affidavit for forgery was signed by Jimmy G. Holly on June 10, 1986 against appellant and a second warrant was subsequently issued for the arrest of appellant by Justice Court Judge, Donald W. Bond, on June 10, 1986. Appellant was captured by the Montgomery County, Mississippi, county sheriff and incarcerated in the Montgomery County Jail. On or about September 27, 1986, appellant allegedly escaped. He was recaptured in December, 1986 in the state of Tennessee and returned to the Montgomery County jail in January, 1987. On October 19, 1987, he was tried before a jury and found guilty of escape and sentenced pursuant to Miss. Code Ann. § 97-9-49(1) (Supp.1987) to a term of three (3) years, from which said sentence and judgment, appellant appeals to this Court.
Appellant offers the following issues for determination:
(1) Whether Hubert Allen Brown, Jr. was lawfully confined in the Montgomery County Jail by virtue “of an arrest on charge of felony and by virtue of a conviction on a charge of felony,” *110 (Record Excerpt 1) as alleged in the indictment.
(2) Appellant was allowed to leave the Montgomery County Jail on the night of September 27, 1986 by a deputy sheriff to go home for a couple of hours. Appellant did not return. The question presented here is whether the deputy sheriff was an “authorized person” as contemplated by the statute to entrust appellant to leave the jail for this purpose.
STATEMENT OF THE FACTS
The Sheriff of Montgomery County, Robert Tompkins, testified that prior to appellant’s alleged escape he was holding appellant in the Montgomery County jail based upon the warrant from the Justice Court and because the State Department of Corrections “did not have ample space for him to come back to Parchman, and they asked me to hold him. They had revoked his parole on a charge of forgery.”
On the night of September 26 and the early morning hours of September 27, 1986, Paul Clark was working at the Montgomery County jail as a deputy. A few minutes before or after midnight on September 26th, 1986, appellant, a trusty prisoner, told the Deputy Sheriff, Paul Clark, that “he had had permission from the sheriff to go home for a couple of hours.” The deputy sheriff did not check with the sheriff to ascertain if permission had been given. This deputy sheriff allowed appellant to leave the jail at approximately 12:15 A.M. with the understanding that appellant was to return at approximately 2:30 A.M. Appellant did not return.
ISSUE # 1
WHETHER APPELLANT WAS LAWFULLY CONFINED IN THE MONTGOMERY COUNTY JAIL AT THE TIME OF HIS ALLEGED JAIL ESCAPE?
Stated briefly, Appellant argues he was not lawfully confined at the time he was given permission by an authorized deputy sheriff to leave the jail for a short period of time. Furthermore, since his incarceration, he had not been afforded a hearing, nor the opportunity to post bond nor was he given the opportunity to be represented by counsel. Therefore, he was justified in not returning, a proposition the State strongly refutes. We agree with the state and hold that “public policy supports the requirement that a prisoner use legal methods, rather than escape, to vindicate his rights.”
“Lawful custody” is required to sustain an escape conviction. Miller v. State, 492 So.2d 978, 981 (Miss.1986). However, we disagree with appellant’s contention that the irregularities alleged here so contaminated the custody as to make it “unlawful” for purposes of analyzing the offense of escape.
Appellee offers the following reasoning:
“Lawful custody” speaks only to the process by which a person has been held or committed. If the process was valid then lawful custody existed, [citations omitted] A prisoner must challenge a conviction through normal trial and appellate channels. Self-help is generally not recognized as a valid method of challenging a conviction.
The right to escape exists only in those extreme cases where confinement is without any authority at all. [citations omitted]
Phillips v. State, 622 P.2d 719, 720 (Okl.Cr.1980)
We think the case of State v. Fulkerson, 300 So.2d 276, 278 (Fla.App.1974) is instructive. Note the following language:
The better reasoned opinions appear to hold that where one is imprisoned under some color of law, he is not entitled to resort to self-help but must apply for his release through regular legal channels. The possibility of violence incident to a prison break dictates strongly against any other rule.
Id. at 278.
To reiterate, in 1983, appellant was sentenced to two five-year terms of imprisonment in the Mississippi State Penitentiary upon his conviction in Desoto County on two counts of forgery. On September 12, 1985 he was paroled. Then on April 17, *111 1986, he violated his probation resulting in a warrant being issued by the Mississippi Corrections Department for his arrest.
In June, 1986 a second arrest warrant was issued by a justice court judge in Montgomery County, Ms. Again, the charge was forgery. Not surprisingly, appellant’s parole was revoked on August 25, 1986. The record is not clear but it stands to reason that when the Sheriff of Montgomery County captured appellant and placed him in the Montgomery County jail his primary reason for doing so was for the charge of forgery that appellant allegedly committed in Montgomery County. The matter of appellant’s parole violation was no doubt discovered by the Montgomery County Sheriff after he’d incarcerated appellant. However, regardless of when the Sheriff initially learned that appellant had violated his parole, there is no question he was in jail on a charge of forgery allegedly committed in Montgomery County thereby making appellant’s stay in the Montgomery County jail "lawful confinement.”
We hold that appellant was imprisoned under color of law and any attempt at redress should have been and should always be through this state’s regular legal channels and not via a self-help escape process.
ISSUE # 2
Whether the deputy sheriff was an “authorized person” as contemplated by the statute to entrust appellant to leave the jail?
On the night of September 26 and early morning hours of September 27, 1986, the deputy sheriff in charge of the jail facility was Paul Clark. Deputy Clark worked the radio and “while he was on the radio, he took care of the jail, based on orders given by me (sheriff).”
Sometime around midnight on September 26, appellant approached Deputy Clark and, according to Deputy Clark, "said that he had had permission from the sheriff to go home for a couple of hours.” Deputy Clark testified, “I just took it on my own that the sheriff had given him permission.” He did not check with the sheriff or any other official. Deputy Clark further testified, “he’d just told me that he had had permission from the sheriff to go see his lady.” The deputy reasonably expected the appellant to return.
Appellee attempted to prove by testimony from Sheriff Tompkins and Deputy Sheriff Paul Clark that only the sheriff had permission to allow anyone to leave the Montgomery County jail. The sheriff testified that he did not authorize appellant to leave the Montgomery County jail, nor did he authorize anyone else in the Sheriff’s Office to allow the appellant to leave the jail on the night in question. Paul Clark testified that only the sheriff had the authority to tell individuals when they could leave the jail if they were confined there. He testified further that no one else had such authority and that he did not have the authority to allow anyone to leave the Montgomery County jail on the night in question.
Appellant argues that the facts of this case clearly show that Deputy Sheriff Paul Clark was “duped” into believing that Sheriff Robert Tompkins had actually given permission for appellant to leave the Montgomery County jail on the night of September 26th or 27th, 1986, for a couple of hours to see his girlfriend.
Appellant contends that it is inconceivable that Deputy Sheriff Paul Clark did not have the authority to entrust him to leave the jail for his intended purpose. Paul Clark was the only deputy sheriff on duty and was in charge of the entire facility that night. In fact, § 19-25-19 Miss.Code Ann. 1972 states in part, “Such deputy shall have authority to do all the acts and duties enjoined upon their principals.” Furthermore, “[a]ll sheriffs shall be liable for the acts of their deputies,.... ” So then, the deputy sheriff in charge of the Montgomery County jail on the night in question was vested with the very same authority to perform and do all acts and duties of Sheriff Robert Tompkins. This included allowing a trusty to leave the confines of the Montgomery County jail for a purpose and to return within a stipulated time. Appellant then reasons that if the deputy sheriff had the same authority as the sheriff to do *112 all acts and duties, then it follows that the deputy sheriff was in charge of the jailhouse on the night in question. § 19-25-69, Miss.Code Ann.1972 states in part: “The sheriff shall have charge of the court house and jail of his county, of the premises belonging thereto, and of the prisoners in said jail.”
Finally, appellant postulates a critical question; If a deputy sheriff is not an “authorized person”, pursuant to the statute, to entrust a person to leave the jail for a purpose and to return within a stipulated time, then one may ask, who is this “authorized person”?
Appellant directs this court to Bourdeaux v. State, 412 So.2d 241 (Miss.1982) in support of his position. That case involved an inmate in the Lauderdale County Jail of semi-trusty status. The inmate left the county jail to carry an officer’s car to the service station. He left the car at the service station, called his girl friend and went for a ride with her from which he did not return. In Bourdeaux the Court determined that appellant “willfully failed to return to the jail within the stipulated time, or after the accomplishment of the purpose for which he was entrusted to leave.” Id. at 243. In conformity with such willful failure to return from an authorized departure rather than the jail itself, this Court held that it must apply Miss.Code Ann. § 97-9-49(2) and therefore impose a sentence not exceeding six (6) months to his original sentence.
We cite a more recent case also closely akin to the facts and issues of the case at bar. In the case of State v. Bradford, 522 So.2d 227 (Miss.1988), appellee was a “trusty” in the Harrison County Jail. He had been assigned to and was working at the Sheriff’s Office Service Station which is about a mile and a half from the jail itself. Appellee had been granted permission to leave the service station on previous occasions but not on the day of the so-called escape. He had been drinking beer with friends when he remembered his ill-fated wedding plans which were interrupted by his incarceration. He decided to go visit his girl friend in Florida and stayed there for a full month until the authorities apprehended him and returned him to Gulf-port.
This court held that at the time of the escape the appellee was lawfully confined at the Harrison County Jail as a result of the penitentiary sentences which had been previously imposed on him. He had previously been convicted of robbery and received two (2) five (5) year sentences. Bradford, at 227. This court further held that similar to Bourdeaux:
[1]n the instant case Bradford was entrusted by an authorized person to leave the jail on a particular errand, that is to the sheriff’s office service station where he worked. It was from this authorized departure that he failed to return. This failure to return constitutes escape pursuant to Miss.Code Ann. § 97-9-49(2). Therefore, the lower court did not err in sentencing the appellee under Miss.Code Ann. § 97-9-42(2) as opposed to Miss. Code Ann. § 97-9-42(1). We affirm.
Bradford, at 228, 229.
Both of these cases are helpful but we would point out a couple of important distinctions. In neither of these cases did the escapee misrepresent or lie to the authorized person who entrusted him on an assignment as was apparently done in the case at bar. Furthermore, in the case at bar unlike in Bourdeaux and Bradford the escapee created the assignment, that is he requested to be allowed to be absent for a couple of hours to visit his girlfriend.
Nevertheless, these distinctions do not compensate for the fact that the deputy sheriff was in charge of the jail on the night in question thus we hold he was an authorized person. It was his duty and obligation to prevent appellant or any other prisoner for that matter from leaving the jail for a purpose such as visiting his girlfriend. In this Court’s opinion, the facts of this case fit squarely within the composition of § 97-9-49(2). In pertinent part, the key language reads:
(2) Anyone confined in any jail who is entrusted by any authorized person to leave the jail for any purpose and who wilfully fails to return to the jail within *113 the stipulated time ... and may be punished by the addition of not exceeding six (6) months to his original sentence.
Appellant was lawfully confined in Montgomery County Jail when he did indeed “dupe” Deputy Sheriff Paul Clark into believing that the Sheriff had granted him permission to visit his girlfriend for a couple of hours. As an “authorized person” in charge of the jail on the night in question, Deputy Sheriff Clark entrusted appellant to leave the jail for the purpose of visiting his girlfriend which comports with the language in the Statute which reads, “any purpose.” Finally, appellant wilfully failed to return to the jail within the stipulated 2 hour period of time.
We affirm appellant’s conviction of jail escape, vacate the sentence, and remand for a proper sentencing hearing pursuant to § 97-9-49(2).
JUDGMENT OF CONVICTION OF ESCAPE AFFIRMED; REVERSED AND REMANDED FOR PROPER SENTENCING HEARING.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.