716 A.2d 237

**Floyd Dale FARRIS, Jr.**

v.

**STATE of Maryland.**

**No. 5, Sept. Term, 1998.**

Court of Appeals of Maryland.

Aug. 26, 1998.

26

Denise Oakes Shaffer, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Annabelle L. Lisic, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for appellee.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

RAKER, Judge.

The issue presented in this case is whether the failure to report to the Allegany County Detention Center for weekend service of a prison sentence constitutes the crime of escape as defined by Md.Code (1957, 1996, Repl.Vol., 1997 Supp.) Article 27, § 139.[1] Petitioner, Floyd Dale Farris, argues that his failure to report for weekend service of his prison sentence does not constitute the crime of escape. Under the circum-

---

1. Unless otherwise specified, all statutory references shall be to Maryland Code (1957, 1996 Repl.Vol., 1997 Supp.) Article 27.

stances presented herein, we agree and, therefore, shall reverse.

On November 2, 1995, in the District Court of Maryland in Allegany County, Farris was found guilty of possession of a controlled dangerous substance. He was sentenced to ninety days incarceration, all suspended, with two years supervised probation. On April 30, 1996, in the District Court of Maryland in Allegany County, Farris was found in violation of his probation. The court sentenced him to ninety days incarceration, with sixty days suspended, and three years probation commencing November 2, 1995. On the day of sentencing, as evidenced by his signature on an Order for Probation, Farris agreed to abide by the general conditions of probation and as a special condition, he agreed to "abide by ACSD [Allegany County Sheriff's Department] conditions for weekend service of sentence." [2] The court explained to him that "if you violate those conditions, don't show up on time or anything of that nature, then it is a violation of probation and the additional sixty days will have to be served." The District Court Commitment Record reflects the following:

The total time to be served is 30 days, to run concurrent with any other outstanding or unserved sentence and begin on May 3, 1996. Weekend service of sentence from 11 a.m. Friday till 11 a.m. Sunday for 15 consecutive weekends.

Farris began to serve his sentence on May 3, 1996 and on June 21, 1996, a Friday, he failed to appear at the detention center.[3]

In a criminal information, the State charged Farris with escape, alleging that on June 21, 1996, Petitioner, under legal confinement to the Allegany County Detention Center, unlaw-

---

**2.** Petitioner does not raise, and, therefore, we do not address whether this arrangement amounted to the defendant serving a period of confinement and period of probation at the same time. *See Matthews v. State,* 304 Md. 281, 498 A.2d 655 (1985).

**3.** The District Court docket entries reflect that on July 13, 1996, the court revoked the weekend service of sentence and ordered the balance of the sentence to be served as straight time.

fully and willfully escaped from lawful detention and confinement in violation of Article 27, § 139. At a bench trial in the Circuit Court for Allegany County, upon an agreed statement of facts, the court found Farris guilty of escape and sentenced him to a consecutive six-month term of imprisonment.

Farris noted a timely appeal to the Court of Special Appeals. In an unreported opinion, the intermediate appellate court affirmed. We granted certiorari to answer the question of whether the failure of a person to report for weekend service of a prison sentence constitutes an escape under Article 27, § 139.

Article 27, § 139(a) provides, in pertinent part:

(a) *Escape; sentence therefor; places of confinement.*—(1) If any individual who is legally detained in the State penitentiary or a jail, house of correction, reformatory, station house, or other place of confinement in this State or who is committed to the Alcohol and Drug Abuse Administration for examination or inpatient treatment escapes, the individual is guilty of a felony and on conviction by the circuit court for the county in which the escape takes place, is subject to confinement in the State penitentiary or jail or house of correction for an additional period not exceeding 10 years.

Both parties agree that, under Maryland law, a person may remain in the "constructive" custody of a prison when allowed outside the prison walls, such that a person's departure from constructive custody is the legal equivalent of an escape from the actual place of confinement. They disagree as to whether Petitioner remained within the constructive custody of the detention center during the week.

Our goal in interpreting a statute is to ascertain the intent of the Legislature. *Lewis v. State*, 348 Md. 648, 653, 705 A.2d 1128, 1130 (1998); *State v. Ghajari*, 346 Md. 101, 115, 695 A.2d 143, 149 (1997). We look first to the specific language of the statute, and if the language is clear and unambiguous, we need go no further. *Briggs v. State*, 348 Md. 470, 477, 704 A.2d 904, 908 (1998); *Gargliano v. State*, 334 Md. 428, 435, 639 A.2d 675, 678 (1994). If the language of a statute

is ambiguous, we consider the usual meaning of the words in the context of the setting and the objectives and purposes expressed by the Legislature. *Briggs,* 348 Md. at 477, 704 A.2d at 908. Statutes relating to the same subject matter or sharing a common purpose should be read together. *Gargliano,* 334 Md. at 436, 639 A.2d at 679; *see* 2B NORMAN J. SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 51.01 to .03, at 117–172 (5th ed.1992). A court may not add words to reflect an intent that is not evident in the statute's original form. *Briggs,* 348 Md. at 483, 704 A.2d at 911; *Marriott Employees v. Motor Vehicles Admin.,* 346 Md. 437, 445, 697 A.2d 455, 459 (1996). Criminal statutes must be strictly construed in favor of the defendant to prevent courts from extending punishment to cases not plainly within the language of the statute. *Tapscott v. State,* 343 Md. 650, 654, 684 A.2d 439, 441 (1996); *Jones v. State,* 304 Md. 216, 220, 498 A.2d 622, 624 (1985).

 In order to come within the ambit of Article 27, § 139, the escapee must have been legally detained in "the State penitentiary or a jail, house of correction, reformatory, station house, or other place of confinement in this State or . . . to the Alcohol and Drug Abuse Administration for examination or inpatient treatment." The prisoner must then "escape." The statute does not define the term "escape." In the context of § 139, the word "escape" is used in different senses, that is, in regard to the factual occurrence, and also as the name of the crime. *See* ROLLIN M. PERKINS, CRIMINAL LAW 559 (3d ed.1982). The physical act of escape is the unauthorized departure from lawful custody. *Stewart v. State,* 275 Md. 258, 273, 340 A.2d 290, 298 (1975). BLACK'S LAW DICTIONARY 544 (6th ed.1990) defines the word escape as "[l]eaving physical confinement without permission. The departure or deliverance out of custody of a person who was lawfully imprisoned before he is entitled to his liberty by process of the law. . . ." Custody may be actual or constructive. *See* 4 CHARLES E. TORCIA, WHARTON'S CRIMINAL LAW § 633, at 440 (15th ed.1996) (recognizing the doctrine of constructive custody). A penal institution maintains "constructive" custody when an individu-

al is temporarily permitted to leave while still lawfully committed to that institution. *Stewart,* 275 Md. at 272, 340 A.2d at 298.

Petitioner argues that his failure to report to the detention center for weekend service did not constitute an escape from lawful detention within the meaning of Article 27, § 139(a) because he was not in custody, either actual or constructive, at the time of the alleged escape. Petitioner argues that his weekend sentence was a commitment by the court to the detention center for fifteen consecutive weekends and, as a result, he was not committed or detained in any place of confinement during the week. He argues, in the alternative, that if we were to find that he was in custody at the time of the alleged escape, that there was "no physical departure" from custody by his failure to report to the detention center. The State argues that Petitioner was in confinement in the detention center for thirty days, and, like work release or furloughs, he remained in the constructive custody of the detention center during the intervening weekdays.

To commit the crime of escape, a person "must depart from legal detention or confinement." *Fabian v. State,* 3 Md.App. 270, 281, 239 A.2d 100, 108 (1968); *see also Stewart,* 275 Md. at 273, 340 A.2d at 298 (the gravamen of the offense is the physical departure by an inmate from the place of confinement). The physical act of escape includes not only a departure from the actual place of confinement, but also a departure from constructive custody. We "draw[ ] no distinction between an escape from within the prison walls and one effected when the prisoner, while still in legal custody, was physically outside the prison area." *Ford v. State,* 237 Md. 266, 270, 205 A.2d 809, 812 (1965). Our cases have recognized that a person, lawfully sentenced and committed to a jail or other place of confinement, may commit the physical act of escape within the meaning of Article 27, § 139 even though he or she was actually beyond the physical confines of the institution.

We repeatedly have upheld convictions of escape when a prisoner remained within the constructive custody of a penal

institution. In *Johnson v. Warden*, 196 Md. 672, 75 A.2d 843 (1950), Johnson, initially sentenced to the House of Correction, had been transferred to the Reformatory for Males. At the Reformatory, Johnson was permitted to work at a private farm during the day. He departed from the farm without permission, and was subsequently charged and convicted of the crime of escape. He challenged the legality of his conviction asserting that he was not subject to the statute because he was not confined in the Reformatory at the time of his escape. Rejecting this contention, Chief Judge Marbury, writing for the Court, stated:

> There can be no doubt that the applicant was legally confined in the Reformatory at the time of his escape. The mere fact that he was allowed to work outside on a farm in the daytime does not change the nature of his detention or confinement, and escape from the farm had no legal significance different from an escape from the Reformatory itself.

*Id.* at 674, 75 A.2d at 844.

In *Taylor v. State*, 229 Md. 128, 182 A.2d 52 (1962), Taylor, initially committed to the House of Correction, was transferred to the Sandy Point Correctional Camp. Taylor left his work detail at the University Hospital in Baltimore without permission. He was charged and convicted of escape. Taylor contended that he could not be guilty of the offense as proscribed in § 139 because he was not confined at the House of Correction at the time of his escape. Chief Judge Brune, writing for this Court, rejected this contention, observing that the Sandy Point Correctional Camp was merely an adjunct of the House of Correction, and that, at the time of the escape, "the prisoner continued to be under confinement" at the Sandy Point Correctional Camp. *Id.* at 130, 182 A.2d at 53.

In *Best v. Warden*, 235 Md. 633, 201 A.2d 490 (1964), Best, who was serving a term in the Penitentiary, was permitted to receive medical treatment at the University Hospital. Best walked out of the hospital when his guard temporarily left him to arrange for return transportation. Challenging his conviction for the crime of escape, Best argued that he did not

commit the crime as defined in § 139 because the guard, in leaving him unguarded, had released him from custody. Best also argued that the University Hospital was not a place of confinement. Rejecting his factual argument that he had been released from custody, this Court held that, under the reasoning of *Johnson*, Best remained in the custody of the Penitentiary even beyond its physical confines. *Id.* at 634–35, 201 A.2d at 491.

In *Ford v. State*, 237 Md. 266, 205 A.2d 809 (1965), Ford, serving a sentence in the Maryland Correctional Institution, was transported to the Criminal Court of Baltimore to stand trial for another crime. Ford was escorted by a correctional officer who removed his handcuffs. Having been granted permission to get a drink of water, Ford broke away from his guard and ran out of the courtroom. This Court concluded that although Ford was outside the Maryland Correctional Institution at the time of the escape, he was still in legal custody when he broke away from the guard, and was therefore properly convicted of escape under § 139. *Id.* at 268–70, 205 A.2d at 810–11.

■■■ What emerges from these cases is the conclusion that when a person remains in lawful custody, departure from the boundaries which restrict that person's movements may constitute an escape. Professor Perkins, in his treatise on criminal law, discussed the physical act of escape and the significance of limits or boundaries:

> [T]he limits within which a prisoner may be required by law to remain, at a certain time, may be the walls of his cell, the walls of his prison, the boundaries of the prison farm, the immediate presence of his guard on the street or elsewhere, the general area of a project on which he is working, such as a road job, or some other. Whatever the limits may be for him at the time, a departure therefrom is the physical part of an escape.

PERKINS, *supra*, at 564 (footnotes omitted). In other words, " 'constructive' custody remains in the place of confinement to which the prisoner had been committed and it is legally

indistinguishable from 'actual' custody." *Stewart,* 275 Md. at 270, 340 A.2d at 296. By judicial interpretation, § 139 prescribes "two modes of committing a single offense, i.e., escaping from the institution itself—from within the walls of the prison—or escaping 'from the bounds where he had been assigned.'" *Id.* at 271, 340 A.2d at 297.

The dispositive issue in this case is whether Petitioner's commitment to the Allegany Detention Center for weekend service of his sentence constitutes "custody" or legal detention in a place of confinement during the weekday period. As we have indicated, in order to constitute the crime of escape, it is necessary that at the time of the departure the person first be in custody, either constructive or actual, as a result of a criminal act. Custody is an elastic concept which, for the purposes of escape, connotes restraint upon a person's freedom. *Urbauer v. State,* 744 P.2d 1274, 1275 (Okla.Crim. App.1987). Without some limits, which may be very narrow or somewhat broad, there can be no custody. *See Peper v. State,* 768 P.2d 26, 29 (Wyo.1989). When a person is free in every sense of the term, he or she is no longer in custody, and hence, cannot be guilty of the crime of escape. This notion that some limitation on personal freedom is inherent in the concept of constructive custody was well stated by Justice Story. He observed:

> But in order to constitute imprisonment there must be actual or constructive custody or restraint. That a person is at liberty to go where he pleases without any restraint, acting or ready to act upon him ... seems to exclude the notion of imprisonment.

*Steere v. Field,* 22 F. Cas. 1210, 1224 (D.R.I.1822) (No. 13350).

The State argues that Petitioner was in custody from the moment sentence was imposed. The State's argument embraces the trial court's reasoning that Petitioner remained in the custody of the Sheriff until his entire sentence was served. The trial judge reasoned:

> The Defendant's situation is analogous to a prisoner on work release or furlough. The District Court committed

the Defendant to the custody of the Allegany County Jail. He began serving his sentence, then failed to return after a periodic five day stay at his home. *Once committed, he remained in the custody of the Sheriff until the sentence was completed.* His weekend status does not immunize him from prosecution for escape.

Contrary to the trial court's characterization of Petitioner's sentence, Petitioner did not remain in custody during his absence from the detention center. Prisoners who remain in constructive custody are, at all times, lawfully under sentence, committed to a specific institution, *and* subject to restrictions that define the boundaries from which an unauthorized departure constitutes an escape. In contrast, during the week, Petitioner was neither lawfully committed to the detention center nor subject to any restrictions.

A weekend sentence is an intermittent sentence.[4] An intermittent sentence enables a person to serve the sentence on the weekend, or at night, or during some specified time. Petitioner was committed to the custody of the detention center only from 11:00 a.m. on Friday until 11:00 a.m. on Sunday, for fifteen consecutive weekends. At the time of his sentencing, the trial court permitted Farris to leave the courtroom; he was told to report on Friday, May 3, 1996, to begin serving his sentence. Petitioner's commitment to the detention center ended at 11:00 a.m. every Sunday. During the week, he lived at his home. He received no credit against his sentence for the time he spent at his home, and, unlike home detention or work release, he was free from any restriction on his activity or movements during the time he was away from the detention

4. Other jurisdictions consider a weekend sentence as an intermittent or periodic sentence. Ohio, for example, defines an intermittent sentence as a sentence that is served overnight, or on weekends, or both, or at any other time or times that will allow a person to continue at employment or to care for family. OHIO REV.CODE ANN. § 2929.51(D)(3) (Banks–Baldwin 1996); *see also* AMERICAN BAR ASSOCIATION, STANDARDS FOR CRIMINAL JUSTICE, SENTENCING, Standard 18–3.19: Intermittent confinement in facility (3d ed.1994), for a discussion of intermediate sanctions and intermittent periods of confinement, such as work release, weekender programs, and day-reporting.

center. In short, there were no bounds or limits on his activities. We conclude that Petitioner was not in custody, actual or constructive, when he failed to report to the detention center to serve his weekend sentence.[5] Because Petitioner was not in custody, he did not leave or physically depart from any place of confinement. Thus, Petitioner's failure to report to the detention center on June 21, 1996 for the weekend incarceration does not constitute "escape" within the meaning of the statute.

If the General Assembly intended to include an Allegany County weekend prisoner's failure to return to the detention center as an escape within Article 27, § 139, that body certainly knew how to do it. The General Assembly has explicitly provided in several counties, although not in Allegany County, that if an individual committed to a local detention center violates a term of leave established under a home detention program or work release program, it shall be considered a violation of § 139. *See, e.g.,* Article 27, § 645T(d) (providing that under Montgomery County's work release program, "[f]ailure of a prisoner to comply with the terms of his authorization for leave shall be considered as a violation of the provisions of § 139"); Article 27, § 645U(d) (providing same in Harford County); Article 27, § 645Z(e) (providing same in Calvert County); Article 27, § 645FF(e)(2) (providing same in Frederick County); Article 27, § 645Y(e)(3) (providing that, in Anne Arundel County, "wilful failure to return to the assigned detention facility" from a work or rehabilitation program is subject to prosecution under § 139); Article 27, § 645BB(d) (providing that under Carroll County's work release program, "[i]f an individual violates a term of leave established under this section, it shall be considered a violation of § 139."); Article 27, § 645EE(d)(2) (providing same in Howard County); Article 27, § 645HH(h) (providing that, with regard to any release program in Kent County, "[f]ailure of a prisoner to

---

**5.** If we accepted the State's theory that Petitioner remained in custody during the week, Petitioner's thirty-day sentence would actually calculate to one hundred and three days.

comply with the terms of his authorization for leave shall be considered as a violation of the provisions of § 139."); Article 27, § 645II(e) (providing same in Wicomico County); Article 27, § 645MM(f) (providing same in Dorchester County). Under Article 27, § 689A(i)(3), an inmate who wilfully violates the restrictions on movement of the Department of Corrections's home detention program "is guilty of escape and upon conviction may be punished under § 139." Similarly, any prisoner released under the Department of Corrections's work release program who wilfully fails to return is subject to the penalties provided in § 139. Article 27, § 700A(c). The General Assembly has not explicitly provided that an Allegany County weekend prisoner's failure to return to confinement constitutes an escape.

It is a fundamental principle of statutory construction that criminal statutes are to be construed narrowly so that " 'courts will not extend the punishment to cases not plainly within the language used.' " *Tapscott,* 343 Md. at 654, 684 A.2d at 441 (citing *State v. Archer,* 73 Md. 44, 20 A. 172 (1890)). As Chief Justice Marshall eloquently observed, in *United States v. Wiltberger,* 5 Wheat. 76, 18 U.S. 76, 95–96, 5 L.Ed. 37 (1820):

> The rule that penal laws are to be construed strictly, is, perhaps, not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department.... To determine that a case is within the intention of a statute, its language must authorize us to say so. It would be dangerous, indeed, to carry the principle, that a case which is within the reason or mischief of a statute, is within its provisions, so far as to punish a crime not enumerated in the statute, because of its equal atrocity or of kindred character, with those which are enumerated.

We decline to find failure to return to serve a weekend sentence as within the provisions of Article 27, § 139.

Other states have enacted statutes that address intermittent or periodic sentences. For example, Illinois, Missouri, Ohio,

and Texas have provided that failure to return to a place of confinement to serve an intermittent or periodic sentence, i.e., a sentence served in intervals such as weekend sentences, constitutes an escape. Illinois law includes within the definition of the crime of escape that "a person convicted of a felony who knowingly fails to report to a penal institution or to report for periodic imprisonment at any time or knowingly fails to return from furlough or from work and day release or who knowingly fails to abide by the terms of home confinement is guilty of a Class 3 felony." 701 ILL. COMP. STAT. ANN. 5/31–6(a) (West 1993 & Supp.1998). Missouri has created a separate crime of failure to return to confinement when a person serving "a term of confinement which is not continuous, or while serving any other type of sentence for any crime wherein he is temporarily permitted to go at large without guard" fails to return to confinement at the time he was required to do so. MO. ANN. STAT. § 575.220 (West 1995). Ohio provides that no person "shall purposefully break or attempt to break the detention, or purposefully fail to return to detention, either following temporary leave granted for a specific purpose or limited period, or at the time required when serving a sentence in intermittent confinement." OHIO REV.CODE ANN. § 2921.34 (Banks–Baldwin 1997). Finally, Texas defines escape as the "unauthorized departure from custody or failure to return to custody following temporary leave for a specific purpose or limited period or leave that is part of an intermittent sentence." TEX. PENAL CODE ANN. § 38.01(2) (West 1994).

In marked contrast to our sister states' statutes that address intermittent or periodic sentences, the Maryland General Assembly has not criminalized a person's failure to return to custody to serve a weekend sentence in Allegany County.[6] "If the law is to be broadened ... it should be modified by the

---

6. Our holding would not preclude the State from charging a defendant with indirect contempt of court, or violation of probation if the requirement to report to the detention center was a special condition of defendant's probation. *See Massey v. State,* 389 So.2d 712, 713 (Fla. App.1980).

Legislature, not by this Court." *Briggs,* 348 Md. at 483, 704 A.2d at 911.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR ALLEGANY COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY ALLEGANY COUNTY.*