20 A.3d 780

**Steven HILL, Terri Alston & Charles Yates**

v.

**STATE of Maryland.**

No. 93, Sept. Term, 2010.

Court of Appeals of Maryland.

May 23, 2011.

Peter F. Rose, Assistant Public Defender (Paul B. DeWolfe, Public Defender, Baltimore, MD), on brief, for Petitioners.

Mary Ann Ince, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

ADKINS, J.

The Petitioners in this case—Steven Hill, Terri Alston, and Charles Yates [1]—were sentenced to terms of imprisonment with a deferred, or "springing," start date. Under these sentences, their jail terms were scheduled to begin three to five years after the sentencing date. The sentencing judge informed Petitioners that if they stayed out of further legal trouble during that time, they could return to court before the start date and have their sentences vacated. Petitioners, however, did not return to court, and later failed to report on the respective start dates, and each was charged and pled guilty to second degree escape.

After the escape convictions, this Court decided *Montgomery v. State,* 405 Md. 67, 950 A.2d 77 (2008), and invalidated a "springing sentence" similar to the underlying sentences here. After that decision, Petitioners attempted to vacate their escape convictions, arguing that they could not be criminally responsible for failure to report for the now-invalid sentences. The Circuit Court denied the motions to vacate the convictions, and the Court of Special Appeals affirmed in an unreported opinion. We granted *certiorari* to determine the following question:

> Whether a conviction and/or sentence for second degree escape is legally [ ]valid if it is predicated on the failure "to obey a court order to report to a place of confinement," where that court order was legally invalid.

We shall answer this question affirmatively and uphold the trial court's denial of motions to vacate the convictions.

## FACTS AND LEGAL PROCEEDINGS

The facts in this case are not disputed by either party, and were summarized by the Court of Special Appeals as follows:
*Hill v. State*

---

1. Jason Hernandez, one of the original Petitioners, withdrew from this appeal.

On March 12, 2002, Mr. Hill pled guilty to possession of cocaine, and the court sentenced him to two years of incarceration, to begin five years later, on March 12, 2007. On March 12, 2007, Mr. Hill failed to report to the Charles County Detention Center to begin his sentence. Mr. Hill was indicted on one count of second degree escape, alleging that he "did unlawfully and knowingly fail to obey a court order to report to the Charles County Detention Center." On February 1, 2008, Mr. Hill pled guilty to second degree escape, and the circuit court sentenced Mr. Hill to a period of incarceration for one year and one day.

On July 2, 2008, and October 16, 2008, Mr. Hill filed, respectively, a "Motion to Vacate Illegal Sentence" and a "Motion to Vacation Conviction." In both motions, he argued that the Court of Appeals decision in *Montgomery* rendered his conviction for second degree escape "void ab initio and a legal nullity."

On October 16, 2008, the circuit court held a hearing. With respect to the conviction and sentence for second degree escape, the court denied Mr. Hill's "motion to vacate the sentence and set aside the conviction." The court stayed execution of the sentence pending appeal. Mr. Hill noted a timely appeal.

### Alston v. State

On October 2, 2002, Ms. Alston pled guilty to a probation violation for failing to pay restitution. The court sentenced Ms. Alston to three years of incarceration, to begin approximately three years later, on October 31, 2005. The court advised Ms. Alston that "[i]f I am advised that the restitution has been paid in full between now and that date I will grant a Motion to Reconsider, vacate the sentence; you won't have to serve any of it." The court added, however, that if "it hasn't been paid as of that date or the date hasn't been extended at your request beyond that—if you don't show up at the sheriff's front desk at 9:00 that morning, there'll be a warrant out for you."

Ms. Alston subsequently was indicted on one count of second degree escape, alleging that she "did unlawfully and knowingly fail to obey a court order to report to the Charles County Detention Center." On May 12, 2006, Ms. Alston pled guilty to the escape charge, and the circuit court sentenced Ms. Alston to a period of incarceration for one year and one day.

On July 24 and October 16, 2008, Ms. Alston filed, respectively, a "Motion to Vacate Illegal Sentence" and a "Motion to Vacate Conviction." She argued that the Court of Appeals decision in *Montgomery* rendered her conviction and sentence for second degree escape void.

On October 16, 2008, the court held a hearing on Ms. Alston's motions. The court denied the motion to vacate the escape conviction and sentence. The court stayed execution of the sentence pending appeal, releasing Ms. Alston on her own recognizance. Ms. Alston noted a timely appeal.

*Yates v. State*

On February 10, 2004, Mr. Yates pled guilty to second degree burglary, and the court imposed a five-year sentence, to begin three years later, on February 14, 2007. On February 14, 2007, Mr. Yates failed to report to the Charles County Detention Center to begin his sentence. On April 30, 2007, Mr. Yates was indicted on one count of second degree escape. On May 21, 2008, Mr. Yates pled guilty to the charge, and the court imposed a sentence of one year and one day.

On July 2 and October 15, 2008, Mr. Yates filed motions similar to those of the other appellants, asking the court to vacate the conviction and sentence for second degree escape. On November 13, 2008, the court denied "the motion." Mr. Yates noted a timely appeal.

(Footnotes omitted).

As the intermediate appellate court's summary reveals, the relevant facts of each case are the same: Petitioners were convicted of second degree escape for failing to report to

prison on a so-called "springing sentence," and later challenged the escape conviction based on the decision by this Court in *Montgomery v. Maryland*, 405 Md. 67, 950 A.2d 77 (2008).

The *Montgomery* decision, issued by this court on June 11, 2008, invalidated certain "springing sentences." *See* 405 Md. at 81, 950 A.2d at 85–86. There, a criminal defendant admitted to violating his probation, and was ordered to serve the remaining ten years of his sentence with a deferred start date of three years after the sentencing hearing. *Id.* at 69–70, 950 A.2d at 79. In ordering the deferred start date, the trial court reasoned "if you are of good behavior between now and three years from now I will reconsider it and vacate it and not make you serve another day." *Id.* The defendant challenged this "springing sentence" as being unauthorized by statute and being illegal, and the issue eventually reached this Court.

We first concluded that, although a deferred sentence was allowed at common law, it would not be allowed for the reasons stated by the trial judge; i.e. to monitor good behavior and give the defendant an opportunity to avoid imprisonment. *See Montgomery*, 405 Md. at 79, 950 A.2d at 84.[2] We next analyzed Maryland Rule 4–348(d), which states that a sentence "may be stayed upon terms the court deems proper." After reviewing the development of that rule, we concluded that a stay was intended to allow the defendant "take care of his or her personal, financial or other commitments[,] [including] such things as winding up business affairs [and] making arrangements for the care of children or other dependents[.]" *Id.* at 81, 950 A.2d at 85. We thus held that "[t]he purpose of the provision was not to allow a trial judge to monitor the defendant's behavior for several years[,]" and that the sentence was illegal. *Id.* at 81, 950 A.2d at 86.

---

**2.** Acceptable reasons for a deferred start date included "when a female defendant was pregnant or when a defendant desired an opportunity to apply for executive clemency." *See Montgomery v. State,* 405 Md. 67, 79, 950 A.2d 77, 84 (2008), and sources cited therein.

The State has conceded that the underlying, springing, sentences are illegal under *Montgomery.* The single issue in this Court, then, is whether Petitioners' failure to report for their sentences, which were later invalidated, supports a conviction for second degree escape.

## DISCUSSION

■ The Petitioners each pled guilty to second degree escape under Maryland Code (2002, 2005 Supp.), § 9–405 of the Criminal Law Article ("CL"), which provides in pertinent part:

(a) Prohibited—(1) A person who has been lawfully arrested may not knowingly depart from custody without the authorization of a law enforcement or judicial officer.

(2) *A person may not knowingly fail to obey a court order to report to a place of confinement.*

\* \* \* °

(c) Penalty.—A person who violates this section is guilty of the misdemeanor of escape in the second degree and on conviction is subject to imprisonment not exceeding 3 years or a fine not exceeding $5,000 or both.

(Emphasis added).

The current form of the escape statute is the result of amendments in 1999, in which the Legislature included, among other things, a "fail[ure] to obey a court order" as an "escape." [3] The Legislature described the purpose of these revisions, contained in Senate Bill 355, and its companion House Bill 463, as follows:

---

3. At that time, the escape statute was contained in Maryland Code (1957, 1996 Repl.Vol., 1997 Supp.), Article 27, Section 137(a). This article was recodified as the Criminal Law article in HB 11 of the 2002 session, enrolled as Chapter 26 of the Maryland Laws 2002. The new second degree escape statute, located in Criminal Law Section 9–405, contained "new language derived **without substantive change** from former Art. 27, Section 137A." Revisor's Note to Chapter 26. (emphasis added).

This bill [makes] one uniform provision applicable to temporary leave and home detention in all counties[, and] mak[es] the failure to report to a correctional facility as required by a court order an escape.

\* \* \*

[House Bill 463] further codifies existing law concerning escape while on leave or otherwise not in a correctional facility. Although the current statute only refers to escape from a correctional facility, case law has adopted the concept of constructive custody to apply this statute to persons who escape while on leave or are otherwise outside of the correctional facility (e.g., in a hospital).

\* \* \*

This bill explicitly covers persons on leave. By defining escape to retain its judicially determined meaning, it also includes those taken out of a correctional facility for other reasons, such as to a hospital or court.

Floor Report to Senate Bill 355, *quoted in Boffen v. State,* 372 Md. 724, 742–43, 816 A.2d 88, 98–99 (2003).[4] As this history demonstrates, the Legislature intended to treat a failure to report for imprisonment identically to an active escape from confinement.

Thus, we turn to case law regarding escape from physical confinement. The Court of Special Appeals has previously upheld an escape conviction despite the defendant's claims that the underlying conviction was illegal. *See, e.g., Vucci v. State,* 18 Md.App. 157, 160, 305 A.2d 483 (1973). In *Vucci,* the

---

**4.** The catalyst for these amendments was this Court's decision in *Farris v. State,* 351 Md. 24, 716 A.2d 237 (1998). There, a defendant was convicted of first degree escape, under the old version of the escape statute, for failing to report for a weekend imprisonment. On appeal, we held that the escape statute did not apply for failure to report, because at that time the defendant was not in "constructive custody" of law enforcement while free during the week. Thus, "he did not leave or physically depart from any place of confinement" when he failed to report. *Id.* at 35, 716 A.2d at 243. Although *Farris* may have involved first degree escape, the Legislative response included the current form of the second degree escape statute.

defendant attempted to escape from prison by cutting a hole through a perimeter fence, and was charged with escape. On appeal, the defendant argued he was being illegally detained because of a procedural defect; "he had not been examined for the purpose of determining his status as a defective delinquent within six months from the date he was received by the [prison], as required by" statute. *Id.* at 159, 305 A.2d at 483. This illegality, he argued, gave him "the absolute right to depart from the confines of [imprisonment.]" *Id.* The Court of Special Appeals disagreed:

> [I]t is clear in Maryland that even if a person is illegally confined because of defects in the procedure by which he was arrested and imprisoned, he is not entitled to resort to self-help but must apply for his release through regular legal channels. We think it is equally clear that even if a person, confined under color of law, is illegally confined because of violations of statutory procedures required with respect to his continued confinement, he is similarly not entitled to resort to self-help but must apply for his release through regular legal channels.

*Id.* at 159, 305 A.2d at 484. The *Vucci* decision is representative of Maryland's strong prohibition against self-help. *See also Jennings v. State*, 8 Md.App. 321, 325, 259 A.2d 547, 550 (1969) (escape convictions are valid "even though [the defendant] might be able to show such defects in the procedure by which he was arrested and imprisoned as would justify his release.").

Maryland's approach to the crime of escape is consistent with a vast majority of courts that have rejected the alleged illegality of the underlying conviction as a defense to escape. *See United States v. Pereira*, 574 F.2d 103, 106 n. 6 (2nd Cir.1978), *cert. denied*, 439 U.S. 847, 99 S.Ct. 145, 58 L.Ed.2d 148 (1978) (illegality of arrest or detention is not a defense to charge of escape); *United States v. Haley*, 417 F.2d 625, 626 (4th Cir.1969) ("A prisoner's complaints concerning the legality of his conviction or of his imprisonment should be addressed to proper administrative body or to the courts. Self help in the form of escape or assault on a prison guard is

indefensible."); *United States v. Smith*, 534 F.2d 74, 75 (5th Cir.1976) ("[V]alidity of conviction under which an escapee is confined is not an element of the offense of unlawful[ ] escap[e.]"); *Petition of Lynch*, 379 Mass. 757, 400 N.E.2d 854, 857 n. 2 (1980) (When "imprisonment is under color of law, the prisoner is not entitled to resort to self-help, but must apply for his release through regular legal channels[.]"); *Brown v. State*, 552 So.2d 109, 110 (Miss.1989) ("[W]here one is imprisoned under some color of law, he is not entitled to resort to self-help but must apply for release through regular legal channels.") (citation omitted); *but see State ex rel. Robison v. Boles*, 149 W.Va. 516, 142 S.E.2d 55, 57 (1965) (accused was not guilty of escape from imprisonment because he was denied assistance of counsel at his previous trial, and the prior conviction was therefore void).

■■■■ Under existing Maryland law, there is a narrow exception to its general prohibition against self-help for criminal defendants. Maryland has recognized that "one *illegally arrested* may use any reasonable means to effect his escape, even to the extent of using such force as is reasonably necessary." *Polk v. State*, 378 Md. 1, 41, 835 A.2d 575, 599 (2003) (quoting *Diehl v. State*, 294 Md. 466, 451 A.2d 115 (1982), *cert. denied*, 460 U.S. 1098, 103 S.Ct. 1798, 76 L.Ed.2d 363(1983)) (emphasis added) (citations omitted).[5] Maryland thus allows a defendant to argue, as a defense to certain criminal charges arising from his resistance to an arrest, that the arrest was illegal.

---

**5.** In addition, we allow self-help when a defendant escapes in response to threats to his life, and immediately reports to the proper authorities upon reaching a position of safety. *See Robinson v. State*, 42 Md.App. 617, 620, 402 A.2d 115, 116–17 (1979) (citing *People v. Lovercamp*, 43 Cal.App.3d 823, 118 Cal.Rptr. 110 (Ca.App.1975) (describing a narrow duress defense to escape)); *see also United States v. Bailey*, 444 U.S. 394, 411, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980) ("[T]he escapee is not entitled to claim a defense of duress or necessity unless and until he demonstrates that, given the imminence of the threat, [escape] was his only reasonable alternative."). This potential defense is clearly not applicable to the facts here.

 This limited allowance for self-help, however, does not extend to facially valid court orders. For example, a person may not resist an arrest carried out pursuant to a court-issued warrant. *See Rodgers v. State*, 280 Md. 406, 421, 373 A.2d 944, 952 (1977) *cert. denied*, 434 U.S. 928, 98 S.Ct. 412, 54 L.Ed.2d 287 (1977) (A person may not resist "an arrest [ ] made by a peace officer on a warrant duly issued by a judicial officer."). This distinction makes clear that Maryland law requires compliance with court orders, even if there are serious questions about the validity of the order. *Cf. United States v. United Mine Workers*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947) (even where the court's jurisdiction is subject to serious doubt, violation of the court order is subject to sanction); *United States v. Petrella*, 707 F.2d 64 (2nd Cir. 1983) (alleged invalidity of deportation order no defense to charge of illegal re-entry).

Under these standards, Petitioners were properly convicted of escape. They were under a court order to report for a term of imprisonment, and failed to comply with these court orders, a clear violation of CL Section 9–405. A prisoner with an invalid sentence may not engage in self-help, and defy a court order of imprisonment, any more than a prisoner with a potentially invalid conviction. *See Jennings*, 8 Md.App. at 325, 259 A.2d at 550 (escape convictions are valid "even though [the defendant] might be able to show such defects in the procedure by which he was arrested and imprisoned as would justify his release."). Although Petitioners may have grounds to challenge their underlying, springing sentence, that challenge must be made through the appropriate channels.

Petitioners' argument to the contrary falls short. They argue that illegality of the underlying court order is a defense to escape because the escape statute, CL Section 9–405(b), requires the underlying court order to be lawful. In support of this point, Petitioners cite language from *Boffen v. State*, 372 Md. 724, 816 A.2d 88 (2003). The *Boffen* Court reversed a first degree escape conviction, explaining that for a valid escape conviction "the escapee must have been *legally* detained[,]" and that "escape is the unauthorized departure from

*lawful* custody." *Id.* at 733, 816 A.2d at 93 (emphasis added) (citations omitted).

Petitioners, however, take the *Boffen* language out of context. Boffen had been convicted of certain credit card offenses, and appeared in court for a sentencing hearing. *Id.* at 727, 816 A.2d at 89. When the judge stated that "the sentence under count number one is fifteen years to the Division of Correction . . . [,]" Boffen "interrupted him, bolted from the courtroom, and ran out onto the street where he was eventually arrested." *Id.* He was later tried and convicted for escape. His appeal to the Court of Special Appeals, on grounds that he was not yet in police custody when he fled, proved unsuccessful.

We granted certiorari to define the boundaries of "custody." We reviewed *State ex rel. Johnson v. Warden,* 196 Md. 672, 674, 75 A.2d 843, 844 (1950), where we held:

> [A] prisoner was **legally confined** in the State Reformatory . . . even though he was allowed to work outside, unguarded, on a private farm, and that, when he escaped from the farm, he was subject to punishment for escape from the Reformatory.

(Emphasis added). We also considered *Ford v. State,* 237 Md. 266, 205 A.2d 809 (1965), where we held that a prisoner was in constructive custody of the State while being transported from a prison, and stated:

> Maryland draws no distinction between an escape from within the prison walls and one effected when the prisoner, while still in **legal custody,** was physically outside the prison area.

*Id.* at 270, 205 A.2d at 812. (emphasis added). We then distinguished *Johnson* and *Ford,* because, unlike those cases, Boffen had not yet entered custody of law enforcement, constructive or otherwise, at the time he fled. *See Boffen,* 372 Md. at 747, 816 A.2d at 101–02. We therefore reversed his conviction.

In this line of cases, we referred to "lawful custody" to signify that the defendant was "within the actual or construc-

tive custody of a place of confinement within the meaning of the statute." *See Boffen,* 372 Md. at 733, 816 A.2d at 93 (emphasis added). Contrary to Petitioners' allegation, these cases do not distinguish between *lawful* and *unlawful* official custody.[6] Indeed, those defendants did not allege that their underlying conviction or sentence was invalid. Clearly, the *Boffen* decision did not transform Maryland law so as to allow criminal defendants, seeking relief from their sentences, to engage in self-help instead of filing an appropriate motion or pleading in court.[7]

## CONCLUSION

Petitioners' failure to report for imprisonment was sufficient to support their escape convictions. The subsequent ruling in *Montgomery v. State* allowed Petitioners to challenge, in the appropriate venue, the validity of their "springing" sentences. It did not, however, allow them to engage in self-help. Maryland law has clearly foreclosed, as a defense to escape, a challenge to the validity of the underlying conviction or sentence.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONERS.**

---

6. *Cf. Vucci,* 18 Md.App. at 160, 305 A.2d at 484 (rejecting defense that detention was "illegal," to charges under escape statute which applied to "persons **legally detained** and confined") (emphasis added).

7. We need not reach the State's alternative argument that the *Montgomery* decision was not retroactive.