927 A.2d 15

**Kazeem Adeshina ISHOLA**

v.

**STATE of Maryland.**

**No. 1427, Sept. Term 2005.**

Court of Special Appeals of Maryland.

June 29, 2007.

Julia C. Schiller (Nancy S. Forster, Public Defender, on the brief), Baltimore, for appellant.

Shannon E. Avery (Douglas F. Gansler, Attorney General on the brief), Baltimore, for appellee.

Panel: SALMON, EYLER, JAMES R., SHARER, JJ.

SHARER, J.

This appeal presents the question of whether the use of a fictitious name is tantamount to assuming "the identity of another" with fraudulent intent.

The prosecution and conviction of appellant, Kazeem Adeshina Ishola, is predicated on his alleged violation of Md.Code Ann., Crim. Law, § 8–301, which provides, in relevant part:

(a) (1) In this section the following words have the meanings indicated.

(2) "Payment device number" has the meaning stated in § 8–213 of this title.

(3) "Personal identifying information" means a name, address, telephone number, driver's license number, Social Security number, place of employment, employee identification number, mother's maiden name, bank or other financial institution account number, date of birth, personal identification number, credit card number, or other payment device number.

(b) *Prohibited—Obtaining personal identifying information without consent.* A person may not knowingly, willfully, and with fraudulent intent possess, obtain, or help another to possess or obtain any personal identifying information of an individual, without the consent of the individual, in order to use, sell, or transfer the information to get a benefit, credit, good, service, or other thing of value in the name of the individual.

(c) *Prohibited—Assuming the identity of another.* A person may not knowingly and willfully assume the identity of another:

(1) to avoid identification, apprehension, or prosecution for a crime; or

(2) with fraudulent intent to:

(i) get a benefit, credit, good, service, or other thing of value; or

(ii) avoid the payment of debt or other legal obligation.

Following a jury trial in the Circuit Court for Howard County, appellant was convicted of two counts of assuming the identity of another, in violation of Md.Code, Crim. Law § 8–301(c), and sentenced to two years imprisonment. In his timely appeal, appellant raises a single question for our review:

Does Crim. Law § 8–301(c) encompass the possibility of prosecution for the assumption of a fictitious identity and if not, was the evidence sufficient to sustain a conviction for assuming the identity of another?

Because we find that the circuit court correctly interpreted Md.Code Ann., Crim. Law § 8–301(c), and the evidence is sufficient to support the guilty verdicts, we shall affirm the judgments of the circuit court.

## BACKGROUND

The facts underlying appellant's prosecution are uncomplicated and not in substantial dispute.

On March 19, 2003, appellant visited two branches of Branch, Banking & Trust ("BB&T") in Howard County and, in each instance, attempted to use a false identity to open a bank account. At both branches, he presented a Florida driver's license bearing the name "Christopher J. Pitera." Appellant first called at the Elkridge office of the bank. There an employee became suspicious because the face of the license presented by appellant did not match the sample Florida driver's license displayed in the bank's identification guide. Relying on this discrepancy, a bank officer told appellant that he could not open an account.

Later that day, appellant appeared at a second BB&T branch, in Columbia, and again attempted to open an account. The Columbia branch had been alerted to the earlier attempt to open an account using the purported Florida driver's license as identification. As a result of the bank officer's suspicion, police were contacted. Further investigation revealed that appellant opened an account under another identity, "James P. Nicholas," about two months earlier.

After speaking with staff at the bank, police placed appellant under arrest for "providing fraudulent information to obtain goods and services." A search of appellant incident to his arrest revealed the following: (1) a CitiBank Mastercard, bearing the name "Christopher Pitera"; (2) a check registry bearing the names "Christopher Pitera" and "James Nicholas", with account numbers; (3) a photograph of appellant; (4) a piece of paper on which was written "C.J. Pitera" and an address in Howard County; (5) a BG & E bill; and (6) a credit report relating to "Christopher Pitera." In the continuing investigation, police were never able to locate persons named either "Christopher Pitera" or "James Nicholas." [1]

On March 20, 2003, appellant was charged with two counts of obtaining personal identifying information without consent, and two counts of assuming the identity of another. A one day jury trial commenced on May 16, 2005. At the close of the evidence, appellant moved for judgment of acquittal on all charges, arguing the issues that are now presented to this Court. The circuit court granted appellant's motion as to the two counts of obtaining personal identifying information without consent, but denied the motion as to the two counts of assuming the identity of another. The remaining counts were submitted to the jury, resulting in guilty verdicts, as we have noted.

Additional facts will be set forth below as they become necessary to our discussion of the issues.

## DISCUSSION

Appellant argues that the circuit court wrongfully denied his motion for acquittal on the two counts of assuming the identity of another. He contends that the State "failed to prove that James P. Nicholas and Christopher J. Pitera were people that [sic] actually exist." Therefore, appellant contends, the State failed to satisfy the elements of the crime as set forth in Md.Code, Crim. Law § 8–301(c). He argues on

---

1. The record is silent as to the scope of the inquiry.

appeal, as he did below, that "another" means an actual and existing person, and does not include the use of fictitious identities. The circuit court rejected his interpretation, and denied appellant's motion for judgment. The debate below was highlighted by two questions that were asked by the jurors during their deliberations. The jury first asked, in pertinent part, for the definition of "another." The court responded that "another" means a person "other than the accused." The jury also asked, "Does 'other' mean 'someone' other than the accused?" To that query, the court responded: "You must determine what 'a person may not knowingly and willfully assume the identity of another' means."

Because the issue of sufficiency turns on the definition of "another", we shall first address the circuit court's interpretation of section 8–301(c).

### Statutory Construction

The circuit court's construction of the meaning of the statutory language is a question of law, which we review *de novo*. See *Davis v. Slater*, 383 Md. 599, 604, 861 A.2d 78 (2004). Because we can find no prior authority addressing the meaning of "another" in section 8–301(c), the issue is one of first impression. The aim of statutory construction is to "extract and effectuate the actual intent of the Legislature in enacting the statute." *Reier v. State Dept. of Assessments and Taxation*, 397 Md. 2, 26, 915 A.2d 970 (2007).

As this Court recently explained in a similar situation,

[w]e must construe ... [C.L. § 7–205] to discern the actual intent of the legislature in enacting it. *See Chow v. State*, 393 Md. 431, 443–44, 903 A.2d 388 (2006). We discern the legislature's intent by application of the usual rules of statutory construction. *See id.* Those rules require first and foremost an examination of the language of the statute itself, and, absent an ambiguity in the statutory text, we 'will neither look beyond the words of the statute itself to determine legislative intent nor add to or delete words from

the statute.' " *Stanley v. State,* 390 Md. 175, 182, 887 A.2d 1078 (2005). That is to say, " '[w]here the words of [the] statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning," the Court will give effect to the statute as the language is written.' " *Id.* at 184, 887 A.2d 1078 (quoting *Moore v. Miley,* 372 Md. 663, 677, 814 A.2d 557 (2003). *Allen v. State,* 171 Md.App. 544, 549, 911 A.2d 453 (2006).

Appellant first argues that section 8–301(c) is ambiguous. Viewing the word "another" in light of the full context of section 8–301(b) and (c), appellant asserts, "makes it clear that the Legislature intended the phrase to include only actual persons, not fictitious persons." Further, appellant argues that the legislative history of section 8–301 supports his interpretation that the use of "another" is intended to mean "another person."

We begin by examining the plain language of the statute. *Id.* If the language of the statute is clear and unambiguous, we need not search further. *Evans v. State,* 396 Md. 256, 341, 914 A.2d 25 (2006). If the language does not clearly convey the legislature's intent, we may look to legislative history, or other sources, for evidence of legislative intent. *Id.*

Appellant's argument is constructed by reference to the use of "individual" in section 8–301(b) and "another" in subsection (c). Thus, appellant contends, it is logical to conclude that the reference to "of another" in subsection (c) must be to another *individual.* Appellant posits further that, if the Legislature had intended to proscribe the creation of fictitious persons, the phrase "or a fictitious person," or some similar phrase, would have been included in the statute. We believe appellant's analysis of the statute is flawed, and do not find section 8–301(c) to be ambiguous on its face. Our reading of the statute makes clear that assuming "the identity of another" means assuming any identity other than one's own.

In contrast to appellant's interpretation of the statute, the State argues that sections 8–301(b) and 8–301(c) define separate crimes. We agree that subsections (b) and (c) define

separate offenses: subsection (b) prohibits the use of an individual's personal identifying information without that individual's consent, while subsection (c) bars the assumption of an identity for fraudulent purposes.

Under appellant's interpretation, the use of an identity other than one's own "(1) to avoid identification, apprehension, or prosecution for a crime; or (2) with fraudulent intent to: (i) get a benefit, credit, good, service, or other thing of value; or (ii) avoid the payment or debt or other legal obligation" is proscribed only when the State can prove that the appropriated identity is that of an actual person. We do not find support for that conclusion in our literal reading of the statute. To apply appellant's reasoning would reach the illogical result that a perpetrator need only assume a clearly fictitious identity to escape prosecution.

Appellant has called our attention to several cases of our sister states to support his statutory construction argument. Because we find no ambiguity in section 8–301(c), we need not address either the opinions from other jurisdictions, or appellant's references to other sections of the Criminal Law Article dealing with the prohibited use of fictitious identities.

### Legislative History

While our conclusion that section 8–301 is not ambiguous also makes it unnecessary to consider legislative history, we shall do so for completeness and clarity. We are satisfied that the legislative history of section 8–301 supports the ability of the State to prosecute one who utilizes a fictitious identity, rather than usurping the identity of one whose existence can be proven to the trier of fact.

In his review of legislative history, appellant relies on testimony of several victims of identity theft before the House Judiciary Committee. He further cites the following excerpt from the Bill Analysis accompanying then House Bill No. 334:

This bill makes it a misdemeanor for a person to knowingly and willfully obtain, attempt to obtain, or aid another person in obtaining or attempting to obtain personal identifying

information of an individual, without the authorization of that individual, and sell, transfer, or use that information to obtain, attempt to obtain credit, goods, or services in the name of the individual without the consent of that individual.

Finally, appellant quotes language from a report of the Committee stating that the bill "is the result of an effort involving various government agencies and citizens focused on creating a clear and concise law that will protect the people of Maryland."

The committee testimony and bill analysis cited by appellant do not address the use of false identities for fraudulent purposes; rather, the cited sources relate only to the legislative purpose in the enactment of subsection (b), which was plainly written to protect citizens from identity theft. Section 8–301(c) is simply not mentioned or addressed in the legislative history. The Committee report, on the other hand, does speak to the public policy underlying the enactment of the statute as a whole: to protect the people of Maryland from identity fraud.

That protection would be thwarted if the State, in a prosecution under subsection (c), is required to prove that the identities used for fraudulent pursuits are those of actual, living people. We do not believe that the legislature intended, or that the statute mandates, that the State, to successfully prosecute appellant, was required to exhaust every database, or produce every person whose name is "Christopher J. Pitera" or "James P. Nicholas." We agree with the State's assertion that "the harm of identity theft is [not only] to the individuals whose identity has been appropriated, but *also* to the individuals and institutions who are victimized by the ensuing fraudulent use of assumed identities."

### Sufficiency of the Evidence

In light of our interpretation of section 8–301(c), we next determine whether there is sufficient evidence to convict appellant of the two counts of assuming the identity of another. When reviewing the sufficiency of the evidence, "[t]he

duty of the appellate court is to determine whether, after reviewing the evidence in the light most favorable to the State, a rational trier of fact could have found each element of the crime beyond a reasonable doubt." *Twine v. State*, 395 Md. 539, 554, 910 A.2d 1132 (2006).

The State presented evidence that appellant twice attempted to use an identity that was not his own to open bank accounts.[2] Further, the State presented testimonial and documentary evidence that appellant had previously opened an account with BB&T under yet another fictitious identity. Viewing this evidence in a light most favorable to the State, we find that a rational fact-finder could find each element of section 8–301(c) to be satisfied beyond a reasonable doubt. The jury had before it sufficient evidence from which it could infer that appellant knowingly assumed the identity of another with fraudulent intent, in violation of section 8–301(c).

Because we find no error in the circuit court's interpretation of the statute, and we find the evidence sufficient to support the guilty verdict, we affirm appellant's convictions.

**JUDGMENTS OF THE CIRCUIT COURT FOR HOWARD COUNTY AFFIRMED.**

**COSTS ASSESSED TO APPELLANT.**

---

2. That the mere opening of a banking account is a "benefit, credit, good, service, or other thing of value" was not argued below and is not an issue in this appeal.