945 A.2d 1273

**Kazeem Adeshina ISHOLA**

v.

**STATE of Maryland.**

**No. 66, Sept. Term, 2007.**

Court of Appeals of Maryland.

April 10, 2008.

Julia C. Schiller, Assistant Public Defender (Nancy S. Forster, Public Defender, of Baltimore), on brief, for petitioner.

Steven L. Holcomb, Assistant Attorney General (Douglas F. Gansler, Attorney General of Maryland, of Baltimore), on brief, for respondent.

Argued before BELL, C.J., RAKER, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER (Retired, Specially Assigned) and DALE R. CATHELL (Retired, Specially Assigned), JJ.

GREENE, J.

This case arises from the conviction of Kazeem Adeshina Ishola, the petitioner, in the Circuit Court for Howard County, of two counts of assuming "the identity of another," Md.Code (2002, 2007 Supp.), § 8–301(c) of the Criminal Law Article (hereinafter § 8–301(c)). Ishola's conviction was the result of his use of false identification, in which he apparently assumed two fictitious identities. On appeal, the Court of Special Appeals affirmed Ishola's conviction, noting that the term "another" was not ambiguous, and meant any identity other than one's own, including fictitious identities. Ishola filed a petition for writ of certiorari in this Court, which we granted, to determine the following questions:

1. Does the language contained in Md.Code, Crim. Law § 8–301(c), which requires that one "knowingly and willfully assume the identity of another," encompass the possibility of prosecution for the assumption of a fictitious identity?

2.  If not, is the evidence sufficient to find [Ishola] guilty of assuming the identity of another, where the State failed to present any evidence that the identities assumed were actual, real people?

We answer both questions in the negative. We shall hold that the term "identity of another," as it is used in § 8–301(c), is ambiguous. As a result of the principle of strict construction, we resolve the ambiguity against the State and in favor of Ishola. Furthermore, this result is consistent with the legislative history of § 8–301. Upon our examination of the stated purpose of the statute, its structure, and a subsequent proposed amendment to the statute, we are persuaded that the Legislature did not intend to include the assumption of fictitious identities among the prohibited acts. For these reasons we hold that there was insufficient evidence to support Ishola's conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 19, 2003, Kazeem Adeshina Ishola visited a branch of Branch, Banking & Trust ("BB & T") located in Elkridge, Maryland, and attempted to open a bank account. As identification, he presented a Florida driver's license with the name "Christopher J. Pitera." A bank employee noted that the license did not match the sample Florida driver's license in the bank's identification guide, and as a result, refused to open an account for Ishola. Recognizing Ishola as a current customer at the bank, the bank employee then reviewed the signature card Ishola signed when he opened his current bank account. At the time that he opened that account, Ishola had provided the bank with a New Jersey driver's license bearing the name "James P. McNicolas." The bank's operations manager notified several other branches of the incident.

Among the branches notified was the BB & T branch located in Columbia, Maryland. Later the same day, Ishola entered the Columbia BB & T branch in a second attempt to open a bank account using false identification. The Columbia

branch, having been notified of Ishola's attempt to use false identification at the Elkridge branch, notified the police. Officer Green, of the Howard County Police, responded to the scene, and obtained from Ishola what appeared to be a Florida driver's license bearing the name "Christopher J. Pitera." Officer Green then placed Ishola under arrest for "providing fraudulent information to obtain goods and services." While investigating the case, Officer Green was unable to identify any individuals named either Christopher Pitera or James McNicolas.

During the jury deliberations, the jury foreman sent a note to the judge and asked the court to define "fraud" and "another." After arguments and objections by Ishola, the court answered the questions by stating: " 'Fraudulent intent' is proven if the State establishes beyond a reasonable doubt that the defendant obtained or attempted to obtain a benefit, credit, good, service, or other thing of value by means of unlawful misrepresentation, false statement, or impersonation." The court defined "another" for the jury as "other than the accused." The jury then sent back a second note, asking whether "other" meant "someone" other than the accused. In response, the court stated, "[y]ou must determine what '[a] person may not knowingly and willfully assume the identity of another' means." Thereafter, the jury found Ishola guilty of two counts of assuming the identity of another, pursuant to § 8–301(c). On July 18, 2005, the trial court sentenced Ishola to two consecutive one-year sentences. Ishola noted an appeal to the Court of Special Appeals.

On June 29, 2007, the Court of Special Appeals issued its reported opinion affirming Ishola's conviction. *Ishola v. State,* 175 Md.App. 201, 210, 927 A.2d 15, 20 (2007). In doing so, the intermediate appellate court reasoned that the plain meaning of § 8–301 was not ambiguous. *Id.* at 208, 927 A.2d at 18–19. The court concluded that even fictitious identities were included within the definition of the term "another;" therefore, the State was not required to prove the existence of a person whose identity was stolen. *Id.* at 210, 927 A.2d at 20.

Ishola filed a petition for writ of certiorari in this Court, which we granted. *Ishola v. State*, 401 Md. 172, 931 A.2d 1095 (2007).

## DISCUSSION

We are asked, in the case at bar, to interpret the meaning of § 8–301(c), which provides that "[a] person may not knowingly and willfully assume the identity of another" for certain purposes. The word "another" is not defined in the statute. Our primary purpose, in interpreting a statute, is always "to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision." *Taylor v. Mandel*, 402 Md. 109, 128, 935 A.2d 671, 682 (2007) (internal quotation omitted). In order to ascertain the intent of the Legislature, we begin with the plain language of the statute, and if that language is clear and unambiguous, we look no further than the text of the statute. *Taylor*, 402 Md. at 128–29, 935 A.2d at 682.

Section 8–301(c) provides as follows:

(c) *Same—Assuming identity of another.*—A person may not knowingly and willfully assume the identity of another:

(1) to avoid identification, apprehension, or prosecution for a crime; or

(2) with fraudulent intent to:

(i) get a benefit, credit, good, service, or other thing of value; or

(ii) avoid the payment of debt or other legal obligation.

The parties dispute the meaning of the word "another," as it is used in § 8–301(c). Ishola argues that "another" refers to another person; hence, because the State failed to prove the existence of any actual victim, Ishola contends that the evidence was insufficient to sustain his conviction. The State asserts that "another" means any identity other than Ishola's own, including a fictitious identity. As such, the State argues that there is sufficient evidence to sustain Ishola's conviction,

despite its failure to prove the existence of the people whose identities were actually stolen.

■ In order to ascertain the intent of the Legislature based on the plain language of the statute, we begin with the dictionary definition of the word "another." Although "[d]ictionary definitions are not dispositive as to the meaning of statutory terms," they "provide a useful starting point for discerning what the legislature could have meant in using a particular term." *Stachowski v. Sysco Food Servs. of Baltimore, Inc.*, 402 Md. 506, 525–26, 937 A.2d 195, 206 (2007). In 1999, at the time that the words "identity of another" were codified, Merriam–Webster's Collegiate Dictionary defined "another" as:

1: an additional one of the same kind: one more

2: one that is different from the first or present one

3: one of a group of unspecified or indefinite things <in one way or~>

Merriam–Webster's Collegiate Dictionary 48 (10th ed.1999). Unfortunately, this definition does not resolve whether the word "another" refers to another person, or any identity, including that of a fictitious person. With regard to statutory interpretation, this Court has said that, where "the language is subject to more than one [reasonable] interpretation, it is ambiguous, and we resolve that ambiguity by looking to the statute's legislative history, case law, and statutory purpose." *Taylor*, 402 Md. at 129, 935 A.2d at 683. Because we determine that the term "another," as it is used in § 8–301(c), is subject to more than one reasonable interpretation, it is ambiguous. The two possible reasonable interpretations of the word "another" as it is used in § 8–301(c) are either the identity of another actual person or any identity other than one's own, including a fictitious identity.

■ Having determined that § 8–301(c) is ambiguous, we must "resolve any ambiguity in light of the legislative history, caselaw, and statutory purpose." *Dep't of Health & Mental Hygiene v. Kelly*, 397 Md. 399, 420, 918 A.2d 470, 482 (2007). We also look to "the statute's structure, including the title, and

how the statute relates to other laws." *Stouffer v. Pearson,* 390 Md. 36, 46, 887 A.2d 623, 629 (2005). The ultimate goal, in looking to these sources, is to discern and effectuate the Legislature's purpose in enacting the statute. *Taylor,* 402 Md. at 128–29, 935 A.2d at 682–83.

■■■ We begin our analysis with the fundamental principle that penal statutes are to be strictly construed. *Boffen v. State,* 372 Md. 724, 735, 816 A.2d 88, 94 (2003). We interpret penal statutes narrowly so that "courts will not extend the punishment to cases not plainly within the language used." *Tapscott v. State,* 343 Md. 650, 654, 684 A.2d 439, 441 (1996) (quoting *State v. Archer,* 73 Md. 44, 57, 20 A. 172, 172 (1890)). This Court has explained the rationale behind this fundamental rule of construction as follows:

> The rule that penal laws are to be construed strictly, is, perhaps, not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department. . . . To determine that a case is within the intention of a statute, its language must authorize us to say so. It would be dangerous, indeed, to carry the principle, that a case which is within the reason or mischief of a statute, is within its provisions, so far as to punish a crime not enumerated in the statute, because of its equal atrocity or of kindred character, with those which are enumerated.

*Farris v. State,* 351 Md. 24, 36, 716 A.2d 237, 243–44 (1998) (quoting *U.S. v. Wiltberger,* 18 U.S. (5 Wheat.) 76, 95–96, 5 L.Ed. 37, 42 (1820)), *superseded by statute,* 1999 Md. Laws, Chap. 422, *as recognized in Boffen v. State,* 372 Md. 724, 742–43, 816 A.2d 88, 98 (2003). According to the principle of strict construction, we therefore conclude that fictitious persons are not included within the meaning of "another" as it is used in § 8–301(c). If the Legislature had intended to include fictitious persons within the meaning of "another," it could have done so explicitly.

The Legislature has, in fact, explicitly used the term "fictitious person" in several other statutes. Md.Code (1975, 2002 Repl.Vol.), § 3–404(b) of the Commercial Law Article deals with instances in which the person identified as payee of an instrument is a fictitious person.[1] In a statute similar to the statute at issue, the Legislature has defined shoplifting in part as "[o]btaining or attempting to obtain possession of any merchandise by charging that merchandise to another person without the authority of that person or by charging that merchandise to a *fictitious person*."[2] Md.Code (1973, 2006 Repl.Vol.), § 3–1301(g) of the Courts & Judicial Proceedings

**1.** Section 3–404(b) of the Commercial Law Article provides as follows:
(b) If (i) a person whose intent determines to whom an instrument is payable (§ 3–110(a) or (b)) does not intend the person identified as payee to have any interest in the instrument, or (ii) the person identified as payee of an instrument is a *fictitious person,* the following rules apply until the instrument is negotiated by special indorsement:
(1) Any person in possession of the instrument is its holder.
(2) An indorsement by any person in the name of the payee stated in the instrument is effective as the indorsement of the payee in favor of a person who, in good faith, pays the instrument or takes it for value or for collection.
(Emphasis added.)

**2.** Section § 3–1301(g) of the Courts & Judicial Proceedings Article provides as follows:
(g) *Shoplift.*—"Shoplift" means any 1 or more of the following acts committed by a person without the consent of the merchant and with the purpose or intent of appropriating merchandise to that person's own use without payment, obtaining merchandise at less than its stated sales price, or otherwise depriving a merchant of all or any part of the value or use of merchandise:
(1) Removing any merchandise from its immediate place of display or from any other place on the premises of the mercantile establishment;
(2) Obtaining or attempting to obtain possession of any merchandise by charging that merchandise to another person without the authority of that person or by charging that merchandise to a *fictitious person;*
(3) Concealing any merchandise;
(4) Substituting, altering, removing, or disfiguring any label or price tag;
(5) Transferring any merchandise from a container in which that merchandise is displayed or packaged to any other container; or
(6) Disarming any alarm tag attached to any merchandise.
(Emphasis added.)

Article. (Emphasis added.) In that statute, the Legislature explicitly included both charging merchandise to another person without authority and charging the merchandise to a fictitious person. The General Assembly's explicit inclusion of fictitious person in this statute, and its exclusion of fictitious person in the § 8–301(c) leads us to conclude that the Legislature did not intend to include fictitious person within the meaning of "another."

We are also persuaded by the language of a similar Alabama statute. Ala.Code § 13A–8–194(a) (1975) is a good example of a Legislature's intent to expand the meaning of "false identity" to expressly include the term "fictitious person." It provides: "A person commits the crime of obstructing justice using a false identity if he or she uses identification documents or identifying information of *another person or a fictitious person* to avoid summons, arrest, prosecution, or to impede a criminal investigation." (Emphasis added.) The Alabama statute is an identity fraud statute, much like § 8–301(c). Unlike the Maryland law, however, the Alabama law specifically prohibits the use of both the identity of another person and the use of a fictitious identity. It is the Maryland General Assembly's omission of the term "fictitious person" that further persuades us that the Legislature did not prohibit the use of a fictitious person's identity within the meaning of § 8–301(c).

In addition, our interpretation of § 8–301(c) is consistent with the statute's legislative history. The relevant language of § 8–301(c) was enacted, originally, in 1999 and initially codified as part of Article 27, Section 231. 1999 Md. Laws, Chap. 331. At the time, the Legislature's stated purpose was, *inter alia,* to prohibit "certain persons from using an individual's personal identifying information without the consent of that individual for certain purposes." [3] *Id.* By referencing an

---

**3.** The dissent argues that the Legislature's stated purpose "speaks only to the conduct criminalized under Section 8–301(b)." We do not subscribe to such a narrow interpretation of the statement of purpose clause. There is no indication that the statement of purpose applies

individual who fails to consent to his or her identity being used, the Legislature indicated its intent to prohibit the use of the identity of an actual person, since a fictitious person could never give consent.

Furthermore, the structure of § 8–301 as a whole is instructive on the matter. Section 8–301(b)[4], which immediately precedes § 8–301(c), prohibits an individual from possessing or obtaining "any personal identifying information of an individual, without the consent of the individual." Again, by referencing the consent of the individual whose identity is at issue, the Legislature must have intended the identity to be that of an actual person. Although § 8–301(b) and § 8–301(c) define separate crimes, the structure of § 8–301 indicates that the Legislature intended to prohibit, in § 8–301(c), the use of the same information it prohibited obtaining or possessing in § 8–301(b).

Further proof of this intent is found in the Bill Analysis of Senate Bill 244, the bill that added § 8–301 to the Code, which notes that the bill prohibits a person from: "[o]btaining or aiding another person in obtaining personal identifying information of another individual without the consent of that individual or individual's agent and sell, transfer, or otherwise use *that information* to obtain or attempt to obtain any benefit, credit, goods, services, or other things of value." (Emphasis added.) This summary of the bill describes both § 8–301(b) and § 8–301(c), and notes that the information that an individual is prohibited from obtaining in § 8–301(b) is the

---

only to § 8–301(b). Given that it is located in the introductory part of 1999 Md. Laws, Chap. 331, which codified § 8–301, a more logical conclusion is that it applies to § 8–301 in its entirety.

4. Section 8–301(b) provides as follows:

*(b) Prohibited—Obtaining personal identifying information without consent.*—A person may not knowingly, willfully, and with fraudulent intent possess, obtain, or help another to possess or obtain any personal identifying information of an individual, without the consent of the individual, in order to use, sell, or transfer the information to get a benefit, credit, good, service, or other thing of value in the name of the individual.

same information he or she is prohibited from using in § 8–301(c). Because § 8–301(b) prohibits obtaining or possessing identifying information of an actual individual, we do not believe the Legislature intended to include the identity of fictitious persons in § 8–301(c).

Section 8–301 was amended in 2002.[5] 2002 Md. Laws, Chap. 509. The legislature proposed, through House Bill 358, to add the words "or create a false identity" to § 8–301(c). This proposed amendment would have prohibited the creation of a false identity, in addition to the use of the identity of another. Had this proposed amendment passed, the amended statute arguably would have covered Ishola's conduct in this case; the proposed amendment, however, was ultimately rejected.

■ The dissent notes that "[t]he purpose of the identity theft statute is, clearly, to protect the people of Maryland from identity theft." We agree with this general proposition. The people to be protected by this statute, however, are those whose identities are stolen. Although the dissent concludes that the people to be protected include "those business people or entrepreneurs who are harmed," it overlooks that merchants and the like are protected by the general fraud statutes.[6] Accordingly, we do not believe the Legislature intended to expand the field of victims beyond those whose identities have been stolen.

---

5. The amendment did not change the language at issue in this case, "identity of another," but added to § 8–301(c)(1) the words "identification" and "apprehension" such that the subsection now reads: "to avoid identification, apprehension, or prosecution for a crime."

6. Md.Code (2002), § 1–401 of the Criminal Law Article provides as follows:

Proof of intent—Fraud, theft, and related crimes.

In a trial for counterfeiting, issuing, disposing of, passing, altering, stealing, embezzling, or destroying any kind of instrument, or theft by the obtaining of property by false pretenses, it is sufficient to prove that the defendant did the act charged with an intent to defraud without proving an intent by the defendant to defraud a particular person.

■ According to the dissent, our interpretation of § 8–301(c) allows a perpetrator to "escape prosecution by assuming a fictitious identity" instead of an actual identity, and the dissent claims that this is an illogical result. In our view, the Legislature intended § 8–301(c) to apply only when the defendant assumes the identity of another person. Merely because this section does not apply to this factual pattern does not mean that a perpetrator will escape prosecution, or that our conclusion is unreasonable. Our interpretation means that we have not expanded the statute beyond its intended purpose.

## CONCLUSION

■ Because we hold that the term "another," as it is used in § 8–301(c), is ambiguous, the rule of strict construction requires that we resolve that ambiguity against the State and in favor of Ishola. Furthermore, we believe this result is consistent with the legislative intent. The stated purpose of the legislation, the structure of the statute, and the subsequent attempted amendment all indicate that the General Assembly intended not to include the use of a fictitious identity among the prohibited acts in § 8–301(c). For these reasons, we conclude that the evidence presented at trial was insufficient to sustain Ishola's convictions under § 8–301(c). In order to convict Ishola, under § 8–301(c), the State would have had to prove that Ishola used the identities of another person or persons. This means that the evidence would have had to show that Ishola assumed the identity of some person or persons who actually existed.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY. HOWARD COUNTY TO PAY THE COSTS.**

HARRELL and BATTAGLIA, JJ., Dissent.

Dissenting Opinion by BATTAGLIA, J., which HARRELL, J., joins.

I respectfully dissent.

In the present case, Kazeem Adeshina Ishola was convicted of two counts of assuming the "identity of another" in violation of Section 8–301(c) of the Criminal Law Article, Maryland Code (2002, 2007 Supp.), for using two different false identifications, those of "Christopher J. Pitera" and "James P. Nicholas," in attempts to open bank accounts with Branch, Banking & Trust ("BB & T") on two occasions; during their investigation, the police were unable to locate persons named "Christopher J. Pitera" and "James P. Nicholas." Ishola appealed to the Court of Special Appeals contending that there was insufficient evidence to support his convictions because the State had not proven that Ishola had assumed the identities of actual real people. The Court of Special Appeals, in a reported opinion, affirmed the conviction and held that the term "identity of another" in Section 8–301(c) was unambiguous and meant an identity other than one's own, including fictitious identities. *Ishola v. State*, 175 Md.App. 201, 927 A.2d 15 (2007). The majority reverses; I disagree.

Section 8–301 (c) of the Criminal Law Article states that under certain circumstances an individual may not knowingly and willfully assume the "identity of another":

(c) *Same—Assuming identity of another.—*A person may not knowingly and willfully assume the identity of another:

(1) to avoid identification, apprehension, or prosecution for a crime; or

(2) with fraudulent intent to:

(i) get a benefit, credit, good, service, or other thing of value; or

(ii) avoid the payment of debt or other legal obligation.

The gravamen of the instant case is the phrase "identity of another," in subsection (c). The majority concludes that the phrase "identity of another" is ambiguous and interprets the

statute to prohibit only assuming an identity of an actual individual. This is an error.

Because we interpret statutory language according to its plain, natural and ordinary meaning, *see Rush v. State*, 403 Md. 68, 97, 939 A.2d 689, 706 (2008); *Cain v. State*, 386 Md. 320, 328, 872 A.2d 681, 685 (2005); *Khalifa v. State*, 382 Md. 400, 429, 855 A.2d 1175, 1191–92 (2004); *Graves v. State*, 364 Md. 329, 346, 772 A.2d 1225, 1235 (2001), "identity of another," within subsection (c), does not connote only identities of actual individuals, as revealed in the ordinary definition of "another," being "one that is different from the first or present one." *See* Merriam–Webster's College Dictionary 51 (11th ed.2003); Webster's II New College Dictionary 47 (1999) (defining "another" as "[o]ne more" and "[d]istinctly different from the first"); The Random House Dictionary of the English Language 85 (2nd ed.1987) (defining "another" as "an additional one" and "a different one"). Ishola clearly assumed an identity "different from" his own, when he twice attempted to, and on a different occasion did, open a bank account at BB & T.

What, however, the majority does is substitute the language "identity of another actual real individual" for "identity of another." If the General Assembly intended to exclude assuming the identity of a fictitious person, it would have done so with a direct and explicit reference to such an distinction, rather than focusing on whether the identity is different than one's own.

The import of the majority's opinion is that only those who assume the identity of an actual individual could be prosecuted; a perpetrator could escape prosecution by assuming a fictitious identity, or at least the name of a person who cannot be located. The General Assembly could not have reasonably intended such an illogical result. *See Allen v. State*, 402 Md. 59, 76, 935 A.2d 421, 431 (2007) ("We shall not hew to a plain language approach that beggars common sense."); *Rush*, 403 Md. at 97, 939 A.2d at 706 ("Further, whenever possible, an interpretation should be given to the statutory provisions which does not lead to unreasonable or illogical conse-

quences."); *Miles v. State,* 365 Md. 488, 539, 781 A.2d 787, 817 (2001) (rejecting interpretation of statute as argued because it was " 'unreasonable, illogical, inconsistent with common sense, and absurd' "); *Gray v. State,* 221 Md. 286, 289, 157 A.2d 261, 263 (1960) (rejecting construction of statute because it would "cause the statute to be so unreasonable as to cast serious doubt upon its validity"). The majority, nevertheless, opines that its conclusion is supported by the structure of Section 8–301, which also includes subsection (b), prohibiting in certain circumstances possessing or obtaining "personal identifying information of an individual, without the consent of the individual." [1] The two separate statutory subsections define different crimes: subsection (b) prohibits an individual from *possessing, obtaining, or helping another to possess or obtain* an individual's personal identifying information without that individual's consent, while subsection (c) bars an individual from *assuming* the identity of another. Additionally, the majority's reliance on legislative history is misplaced. The majority cites to two pieces of legislative history: first, Chapter 331 of the Maryland Laws of 1999, stating that the purpose of the identity theft statute is "to prohibit 'certain persons from using an individual's personal identifying information without the consent of that individual for certain purposes,' " and second, the Bill Analysis of Senate Bill (244), providing that the identity theft bill prohibits an individual from "[o]btaining or aiding another person in obtaining personal identifying information of another individual without the consent of that individual or individual's agent and sell, transfer, or otherwise use *that information* to obtain or attempt to obtain any benefit, credit, goods, services, or other things of value."

---

1. Section 8–301(b) of the Criminal Law Article, Maryland Code (2002, 2007 Supp.), states:

   (b) *Prohibited—Obtaining personal identifying information without consent.*—A person may not knowingly, willfully, and with fraudulent intent possess, obtain, or help another to possess or obtain any personal identifying information of an individual, without the consent of the individual, in order to use, sell, or transfer the information to get a benefit, credit, good, service, or other thing of value in the name of the individual.

404 Md. at 164–66, 945 A.2d at 1278–79 (emphasis in original). This legislative history, however, does not address the assumption of a false identity for fraudulent purposes as prohibited in Section 8–301(c), the subsection at issue in this case, but rather, speaks only to the conduct criminalized under Section 8–301(b). The only mention of subsection (c) in the legislative history of the statute includes cursory notes that the statute also "prohibit[s] a person from assuming the identity of another for certain purposes under certain circumstances." 1999 Maryland Laws, Chapter 331. *See also* Department of Legislative Services, Revised Fiscal Note, House Bill 334 (1999) ("The bill also prohibits a person from knowingly and willfully assuming the identity of another with specified fraudulent intent or to avoid prosecution of a crime."); Department of Legislative Services, Revised Fiscal Note, Senate Bill 244 (1999) (same).[2]

The purpose of the identity theft statute is, clearly, to protect the people of Maryland from identity theft. *See* Honorable Carol S. Petzold, House Judiciary Committee, Memorandum in Support of House Bill 334 (1999), February 25, 1999 (bill sponsor stating that the bill "is the result of an effort involving various government agencies and citizens focused on creating a clear and concise law that will protect the people of Maryland"). The people, to be protected, however, are not only those individuals whose identities are assumed, but also those business people or entrepreneurs who are harmed also by the use of the assumed identity. *See* Bill

---

**2.** The majority also draws support from other sections of the Code using the term "fictitious person," a statute from Alabama and the rule of lenity, the principle that "[c]riminal statutes must be strictly construed in favor of the defendant to prevent courts from extending punishment to cases not plainly within the language of the statute," *Moore v. State*, 388 Md. 623, 632, 882 A.2d 256, 261 (2005); *Farris v. State*, 351 Md. 24, 29, 716 A.2d 237, 240 (1998). However, because the statutory language is unambiguous, there is no need to address these other statutory provisions, nor to consider the rule of lenity. *See Jones v. State*, 336 Md. 255, 261–62, 647 A.2d 1204, 1207 (1994), in which we noted that the rule of lenity "is a maxim of statutory construction which serves only as an aid for resolving an ambiguity and it may not be used to create an ambiguity where none exists" and that "[w]hen the statute is unambiguous, the rule of lenity 'simply has no application.' "

Analysis of Senate Bill 244 (1999) ("Additionally, the victims of the current counterfeiting, forgery, and theft crimes are usually banks or other financial institutions or retail establishments."). By interpreting the statute as it does, the majority fails to honor the statute's entire legislative purpose.

The evidence in the present case clearly is sufficient to convict Ishola of identity theft. Ishola twice attempted to use an identity that was not his own, "Christopher J. Pitera," to open bank accounts. Ishola, according to the evidence perused, had previously opened an account with Branch, Banking & Trust under yet another identity not his own, that of "James P. Nicholas." Viewing this evidence in a light most favorable to the State, I believe that a rational fact-finder could find each element of Section 8–301(c) to be satisfied beyond a reasonable doubt. Therefore, I would affirm Ishola's convictions.

Judge HARRELL authorizes me to state that he joins in this dissenting opinion.